## GLORIA TRIMEL *v.* LAWRENCE AND MEMORIAL HOSPITAL REHABILITATION CENTER ET AL.
### (AC 19675)

Foti, Schaller and Dupont, Js.

Argued September 15, 2000—officially released January 16, 2001

*William F. Gallagher*, with whom, on the brief, was *Thomas J. Airone*, for the appellant (plaintiff).

*Michael E. Driscoll*, with whom, on the brief, was *Jeffrey F. Buebendorf*, for the appellees (defendants).

*Opinion*

SCHALLER, J. The plaintiff, Gloria Trimel, appeals from the judgment of the trial court rendered after it granted the motion for summary judgment filed by the defendants, Lawrence and Memorial Hospital Rehabilitation Center (Lawrence and Memorial) and Flanders Health Center (Flanders). On appeal, the plaintiff claims that the court improperly granted the motion because the court incorrectly characterized her claim as sounding in medical malpractice rather than in ordinary negligence. We affirm the judgment of the trial court.

The following facts are relevant to our discussion of this issue. The plaintiff suffers from multiple sclerosis and has been confined to a wheelchair since 1990. The defendants provided the plaintiff's regimen of physical therapy, which she attended on a regular basis starting in 1995. The physical therapy sessions included "transfers" to and from a wheelchair. One method of transfer involved the use of a transfer board, which permitted the plaintiff to move unassisted from the wheelchair to another location. The plaintiff eventually learned to perform transfers without assistance. Although she performed the transfers without assistance, she did so in the presence of a physical therapist. See footnote 4. On October 22, 1995, while attending a physical therapy session at Flanders, which is a satellite clinic of Law-

rence and Memorial, the plaintiff attempted to use her transfer board to maneuver from her wheelchair to an exercise mat where the therapy session would begin. During that maneuver, the plaintiff fell from the wheelchair and sustained injuries.

As a result of the incident, the plaintiff filed a two count complaint, alleging that her injuries resulted from the negligence of her therapist, Maryann Mills, and Mills' employers, Lawrence and Memorial and Flanders. The defendants responded by filing a motion for summary judgment, supported by affidavits of Mills and Lawrence and Memorial Hospital chief operating officer, Cynthia Kane, and the transcript of the deposition testimony of the plaintiff and Mills. The court granted the motion, concluding that the action sounded in medical malpractice and, therefore, required the filing of a certificate of good faith pursuant to General Statutes § 52-190a. The plaintiff now appeals.

The plaintiff claims that the court improperly granted the defendants' motion for summary judgment by characterizing her claim as sounding in medical malpractice rather than ordinary negligence, and thereby requiring a certificate of good faith. She claims specifically that, as a matter of law, a claim for personal injuries resulting from a fall by a person dependent on a wheelchair while transferring from a wheelchair to an exercise mat in a physical therapy facility during a scheduled therapy session involves ordinary negligence, not medical malpractice. We disagree.

"Our standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

. . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . .

"On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment for the [defendants] as a matter of law, our review is plenary and we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . On appeal, however, the burden is on the opposing party to demonstrate that the trial court's decision to grant the [movants'] summary judgment motion was clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Crystal Lake Clean Water Preservation Assn.* v. *Ellington*, 53 Conn. App. 142, 146–47, 728 A.2d 1145, cert. denied, 250 Conn. 920, 738 A.2d 654 (1999).

The plaintiff's appeal, in essence, seeks to have us draw a line in her favor between ordinary negligence claims, which do not require good faith certificates, and medical malpractice claims, which do require a certificate of good faith pursuant to § 52-190a[1] and typi-

[1] General Statutes § 52-190a (a) provides: "No civil action shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint or initial pleading shall contain a certificate, on a form prescribed by the rules of the superior court, of the attorney or party filing the action that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant. For purposes of this section, such good faith may be

cally require expert testimony. See *Caron* v. *Adams*, 33 Conn. App. 673, 690, 638 A.2d 1073 (1994). The plaintiff concedes that the defendants are "health care providers" pursuant to General Statutes § 52-184b.[2] The plaintiff also concedes that if this court concludes that her claim was correctly classified as a medical malpractice claim, then the trial court's order was proper because she did not file a certificate of good faith.[3]

The classification of a negligence claim as either medical malpractice or ordinary negligence requires a court to review closely the circumstances under which the alleged negligence occurred. "[P]rofessional negligence or malpractice . . . [is] defined as the *failure of one rendering professional services* to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent

shown to exist if the claimant or his attorney has received a written opinion, which shall not be subject to discovery by any party except for questioning the validity of the certificate, of a similar health care provider as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence. In addition to such written opinion, the court may consider other factors with regard to the existence of good faith. If the court determines after the completion of discovery, that such certificate was not made in good faith and that no justiciable issue was presented against a health care provider that fully cooperated in providing informal discovery, the court upon motion or upon its own initiative, shall impose upon the person who signed such certificate, a represented party or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee. The court may also submit the matter to the appropriate authority for disciplinary review of the attorney if the claimant's attorney submitted the certificate."

[2] General Statutes § 52-184b (a) defines "health care provider" as "any person, corporation, facility or institution licensed by this state to provide health care or professional services, or an officer, employee or agent thereof acting in the course and scope of his employment."

[3] Although we uphold the court's granting of the defendant's motion for summary judgment, we note that the failure to file a certificate of good faith when bringing a medical malpractice claim ordinarily is a curable defect. See *LeConche* v. *Elligers*, 215 Conn. 701, 711, 579 A.2d 1 (1990).

reputable member of the profession with the result of injury, loss, or damage to the recipient of those services." (Emphasis added; internal quotation marks omitted.) *Santopietro* v. *New Haven*, 239 Conn. 207, 226, 682 A.2d 106 (1996). Furthermore, malpractice "presupposes some *improper conduct in the treatment or operative skill* [or] . . . the failure to exercise requisite medical skill . . . ." (Citations omitted; emphasis added.) *Camposano* v. *Claiborn*, 2 Conn. Cir. Ct. 135, 136–37, 196 A.2d 129 (1963). From those definitions, we conclude that the relevant considerations in determining whether a claim sounds in medical malpractice are whether (1) the defendants are sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship, and (3) the alleged negligence is substantially related to medical diagnosis or treatment and involved the exercise of medical judgment. See *Spatafora* v. *St. John's Episcopal Hospital*, 209 App. Div. 2d 608, 609, 619 N.Y.S.2d 118 (1994).

The facts of this case reveal that the defendants are medical professionals and that the plaintiff was at their clinic for treatment, specifically her therapy session. Her session was to begin on the exercise mat, which required her to transfer from the wheelchair to the mat. The question is whether allowing the plaintiff to transfer unassisted on the day in question, after she had learned to perform transfers without assistance, involved the exercise of medical judgment. That question is a close one.

It is evident that a transfer by one afflicted with multiple sclerosis requires substantial training through therapy and that performing the maneuver is, in itself, no small matter.[4] Transfers required training and prac-

---

[4] Referring to her therapy session with Nancy Bucko, her therapist prior to Mills, the plaintiff testified in her deposition as follows:

"Q. When you say that you would do transfers, is that your—when you're

tice through the course of therapy, regardless of whether the health care provider concluded that the plaintiff was proficient enough to perform the transfer without supervision. The plaintiff testified in her deposition: "I asked [Mills] if she wanted me to do [the transfer] without her. I called across the room and she said yes." Mills testified in her deposition that one of the goals of the therapy at the time the injury occurred was "[w]orking on transfer training." Mills further testified that "[g]enerally she was independent in doing those transfers. If she came in and she was not having a good day, for whatever reason, whatever her version of not having a good day was, she would let me know that her arms were sore or her legs hurt or something wasn't feeling right. She would request assistance as she needed it." Mills also stated that she would determine the mode of transfer to physical therapy equipment by "her statement as [the plaintiff] comes in, how—usually you greet the patient, you ask them how they're doing, what type of day they had. She would indicate to me whether or not she had a good night or not so good night, whether she felt like she needed a lot of assistance that particular morning getting up with her aide coming to the house or if she generally felt weak."

---

saying you do a transfer, you mean you yourself are transferring from your chair to the mat?

"A. Initially she was helping me.

"Q. Nancy Bucko?

"A. Nancy Bucko.

"Q. Yes.

"A. And showing me how exactly it needed to be done and I was able to become proficient at doing it but she was always standing right in front of me or next to me so if anything adverse would occur, there would be help at hand.

"Q. Okay. I take it you were able with Nancy Bucko most times to transfer yourself without assistance.

"A. In the beginning, no. As we went into later, more or less, yes.

"Q. But there came a point where you could?

"A. Where I could?

"Q. Transfer unassisted?

"A. Yes, but there was always someone there so I felt confident in doing it."

Notwithstanding evidence adduced that the plaintiff performed transfers on her own at times, in the course of therapy sessions, Mills routinely made assessments of the plaintiff's physical capabilities in performing transfers. Training the plaintiff to perform transfers was a stated goal of therapy. The plaintiff's claim, therefore, is properly characterized as a medical malpractice claim.

The plaintiff further argues that her claim may be characterized as a negligent supervision claim rather than a medical malpractice claim because expert testimony is not required to establish the negligence of the defendants. Medical malpractice claims do not necessarily require expert testimony. Although a court requires expert testimony to establish the relevant standard of care in most cases; see *Barrett* v. *Danbury Hospital*, 232 Conn. 242, 252, 654 A.2d 748 (1995); "[s]ome aspects of a medical malpractice action are considered to be within the realm of a jury's knowledge"; *Caron* v. *Adams*, supra, 33 Conn. App. 690; and, thus, do not require expert testimony. The characterization of a claim as ordinary negligence or medical malpractice, therefore, does not turn on whether expert testimony is required.

The rule of law that distinguishes between medical malpractice and ordinary negligence requires a determination of whether the injury alleged occurred during treatment because of a negligent act or omission that was substantially related to treatment. That rule is illustrated by review of the major cases, specifically *Levett* v. *Etkind*, 158 Conn. 567, 573, 265 A.2d 70 (1969), and *Badrigian* v. *Elmcrest Psychiatric Institute, Inc.*, 6 Conn. App. 383, 386, 505 A.2d 741 (1986), offered by the parties in support of their positions.

In *Levett*, the plaintiff's decedent claimed negligence by a physician when the decedent fell in the physician's

dressing room during a scheduled visit. The decedent was elderly and infirm and, although the physician suggested that his nurse assist the decedent, he never ordered the nurse to do so. The physician knew that the decedent tended to lose her balance when her eyes were closed, but he did not believe that the risk would be significant when she disrobed. The decision by a medical professional to allow a patient to engage in a routine activity, dressing and undressing, in which there is a potential risk of injury, i.e. losing balance and falling, and involving some assessment of the patient's condition at the time involves the exercise of a medical judgment. *Levett* v. *Etkind*, supra, 158 Conn. 573. The mere characterization of an activity as routine does not exclude that activity from the realm of medical judgment. Thus, the fact that a transfer may be considered routine is not dispositive.

After reviewing the facts, our Supreme Court in *Levett* concluded that "[t]he plaintiff alleged in her complaint and offered proof that the decedent was in the defendant's office as a patient of the defendant. This was admitted by the defendant in his answer and was included in his claims of proof. There can be no doubt therefore that the relationship of physician and patient existed. The defendant had been the decedent's family physician since 1944. The determination whether the decedent needed help in disrobing and, in the event she should refuse such help, what course of conduct to pursue called for a medical judgment on the part of the physician predicated on his knowledge of her physical and mental condition on that day. The duty of the defendant in his capacity as a physician was to exercise reasonable care, skill and diligence in treating the plaintiff as a patient." Id.

By way of comparison, *Badrigian* v. *Elmcrest Psychiatric Institute, Inc.*, supra, 6 Conn. App. 383, involved a negligence claim relative to a plaintiff's dece-

dent. The decedent had been hospitalized at the defendant's facility, a psychiatric institute, which offered inpatient and outpatient care, and treatment. The decedent had entered the inpatient facility where he remained until his discharge four weeks later. Upon his discharge from the inpatient facility, the outpatient facility accepted the decedent as a patient. The outpatients, as part of their therapy and treatment, were encouraged to eat lunch at the inpatient facility. The inpatient and outpatient facilities were situated on either side of a state highway. The day following his discharge, the decedent visited the outpatient facility for treatment and, when he crossed the highway to go to lunch, a car struck and killed him. Id., 385.

The court in *Badrigian* noted that "[t]he defendant is attempting to transform this case from one of simple negligence into that of medical malpractice requiring expert medical testimony to prove a medical standard of care and a breach thereof." Id., 386. Under the facts of *Badrigian*, "[t]he [trial] court correctly decided that this was not a medical malpractice action, but an action sounding in ordinary negligence . . . ." Id. The *Badrigian* decision revolved around the propriety of submitting to a jury a claim against a hospital without expert testimony and the failure to charge the jury on elements of a medical malpractice claim. The *Badrigian* court, however, stated that "one need not be guided by medical experts in determining whether a mentally ill person should be allowed to cross on foot a heavily traveled four lane state highway without supervision"; id., 387; thus alluding to the proper identification of the claim as one of ordinary negligence, not medical malpractice.

The distinction between the negligence claim in *Levett* and the negligence claim in *Badrigian* is predicated on the relation of the alleged negligent act or omission to the treatment. In *Levett*, the plaintiff was in the physician's office for purposes of a scheduled visit. Her claim

for injuries that resulted from a fall while disrobing in the office, after her physician had made a medical judgment that she could disrobe safely, was substantially related to her medical treatment and, therefore, properly was a claim of medical malpractice. In contrast, the decedent in *Badrigian* was on his lunch break from his scheduled treatment. The mere fact that the treatment facility encouraged the patient to eat at its facility, which was designed in such a way as to require patients to cross a major highway, did not make meals a part of the treatment and thereby transform the claim into one sounding in medical malpractice. The facility in *Badrigian* owed a duty to any customer to provide a safe facility, not just to patients, and in failing to do so the plaintiff properly asserted a claim of ordinary negligence. The alleged negligence, therefore, was not substantially related to the medical services provided by the facility and, accordingly, the court properly classified the plaintiff's claim as involving ordinary negligence.

We conclude, considering *Badrigian* and *Levett* and the definition of medical malpractice, that the plaintiff's claim is one of medical malpractice rather than ordinary negligence. It cannot be said that a medical professional's decision not to supervise a maneuver that was learned through the course of therapy, when the health care provider is familiar with the strengths and weaknesses of the individual patient, is any less a medical judgment than the decision to supervise a patient with known physical deficiencies in the course of a routine as common to everyday existence as dressing and undressing.

The plaintiff was in the defendants' facility for treatment, the plaintiff's treatment had included unassisted transfers with supervision, and the plaintiff's injury resulted from a mishap during a transfer without supervision. It was a medical professional's judgment that

allowed the transfer to proceed unassisted. Those considerations lead to the conclusion that the plaintiff's claim against medical professionals with whom she had a medical professional-patient relationship involved a negligent act or omission during an activity that was substantially related to her treatment. As such, she was required to file a certificate of good faith pursuant to § 52-190a and failed to do so. The court's granting of the defendants' motion for summary judgment therefore was proper as a matter of law.

The judgment is affirmed.

In this opinion the other judges concurred.