[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON MOTION TO STRIKE
 I FACTS
On June 19, 2001, the plaintiff, Catherine Petronio, filed a three-count complaint against the defendants, David Burich, Dr. Dennis Spencer and Yale New Haven Hospital (Yale). The first count, addressed to Burich only, states a claim for intentional infliction of emotional distress, while the second and third counts, both addressed to Spencer and Yale, sound in negligence and breach of implied contract, respectively. The plaintiff claims to have been injured by the actions of the defendants due to the following events: during the year 1997, the plaintiff was hospitalized at Yale on three separate occasions for the purpose of undergoing brain surgery performed by Spencer to treat the plaintiff's epilepsy. On the occasion of each of the plaintiff's hospitalizations at Yale, she was assigned as her primary care nurse Burich, whose duties included catheterizing the plaintiff during each hospitalization. The plaintiff further alleges that Burich's procedures in administering catheterizations to her were improper in the following respects: in that he would cover the monitoring cameras in her hospital room prior to the commencement of the procedure; and in that the catheterization procedures were accompanied by "inappropriate smiles and gestures, unwanted sexual contact, unwanted intimate contact and other similar behaviors" by Burich. Additionally, the plaintiff alleges that throughout 1997 and early 1998, Burich "established a close and personal relationship with the plaintiff that exceeded the boundaries of the professional realm and carried over into the plaintiff's personal life." As a result of the foregoing activities, the plaintiff alleges that she subsequently developed physical and psychological problems resulting in emotional distress and mental anguish and requiring continuing treatment CT Page 5243 to her financial detriment.
On December 3, 2001, the defendants filed a motion to strike all counts of the complaint on the ground that each count sounds in medical malpractice thereby requiring the filing of a statutory good faith certificate with the complaint, that count one fails to allege facts sufficient to establish Burich's actions as the proximate cause of the plaintiff's emotional distress and that count three fails to allege facts sufficient to state a cause of action for breach of contract. The motion to strike was accompanied by a memorandum in support, filed on December 3, 2001, and a revised memorandum in support, which was filed on December 20, 2001. On January 3, 2002, the plaintiff filed a memorandum of law in opposition.
 II DISCUSSION
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any [complaint] . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). "[T]he absence from the [medical malpractice] complaint of the statutorily required good faith certificate renders the complaint subject to a motion to strike . . . for failure to state a claim upon which relief can be granted. . . ." LeConche v. Elligers,215 Conn. 701, 711, 579 A.2d 1 (1990). In ruling on a motion to strike, the trial court examines the complaint "construed in favor of the plaintiffs, to determine whether the [pleading party has] stated a legally sufficient cause of action." (Internal quotation marks omitted.) Dodd v.Middlesex Mutual Assurance Co., 242 Conn. 375, 378, 698 A.2d 293 (1997). "[G]rounds other than those specified should not be considered by the trial court in passing upon a motion to strike. . . ." (Internal quotation marks omitted.) Gazo v. Stamford, 255 Conn. 245, 259,765 A.2d 505 (2001).
 A Intentional Infliction of Emotional Distress
The defendants have moved to strike the first count of the complaint on two grounds. The first ground is that the plaintiff has failed to include with the complaint the statutory good faith certificate required by General Statutes § 52-190a.[1] The second is that the plaintiff has failed to establish that Burich's actions were the proximate cause of the plaintiff's emotional distress. CT Page 5244
In support of their first ground, the defendants argue that § 52-190a
requires the filing of a good faith certificate for actions sounding in medical negligence and that paragraphs eighteen and nineteen of the first count allege the breach of Burich's duty as a health care provider to insure that no unprofessional conduct was undertaken by him during his care and treatment of the plaintiff. The claim of intentional infliction of emotional distress which is the basis of the plaintiff's first count is derived from the same factual basis involving claims of medical malpractice, according to the defendants.
The plaintiff argues in response that none of the counts of the complaint sound in medical malpractice which would require the filing of a good faith certificate and that the first count, in fact, has its basis in intentional tort. "Because this count alleges wilful rather than negligent conduct, this count is not subject to the requirements of § 52-190a, which apply only to actions based upon negligence."Pascarelli v. Corning Clinical Laboratories, Inc., Superior Court, judicial district of Danbury, Docket No. 325312 (March 25, 1997,Moraghan, J.) (19 Conn.L.Rptr. 82, 84). "Using a functional analysis, if a health care provider intentionally intends to inflict emotional distress it is difficult to see why either expert opinion or a certificate of good faith would be required. Just as in the case of a surgeon who leaves a sponge inside his patient or amputates the wrong limb, the deviation from professional standards in a case of intentional infliction of emotional distress would be so manifest that any layperson could determine it." Johnson v. Atlantic Health Services, Superior Court, judicial district of New Haven at New Haven, Docket No. 430613 (August 18, 2000, Blue, J.) (28 Conn.L.Rptr. 84, 85). The behavior of Burich which forms the basis of the plaintiff's claim of intentional infliction of emotional distress against Burich is grounded on wilful, not negligent conduct.
Additionally, there are no allegations in the first count to support the defendants' argument that Burich breached his duty of care as a health care provider to insure that no "unprofessional conduct" was involved in his care and treatment of the plaintiff. (See Defendant's Revised Memorandum, p. 3.) On the contrary, the plaintiff's specific allegations that Burich covered the monitoring cameras in her hospital room, that he smiled and gestured inappropriately, that he initiated unwanted sexual and intimate contact all during catheterization procedures and that he subsequently initiated a personal relationship with her are unrelated to and outside the realm of any conceivable medical care or treatment. Count one therefore survives the defendants' motion to strike for failure to attach a good faith certificate. CT Page 5245
The defendants' second argument for striking count one is the alleged failure of the plaintiff to establish that Burich's actions were the proximate cause of the plaintiff's resulting emotional distress. In response, the plaintiff counters that the passage of time between the two and the lack of foreseeability of the consequences of Burich's actions are questions of fact to be determined by the jury.
"In order for the plaintiff to prevail in a case for liability under . . . [the intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337
(1986). "Proximate cause results from a sequence of events unbroken by a superseding cause, so that its causal viability continued until the moment of injury or at least until the advent of the immediate injurious force." Coburn v. Lenox Homes, Inc., 186 Conn. 370, 383, 441 A.2d 620
(1982). "Proximate cause is ordinarily a question of fact." Id., 384.
The allegations of paragraphs eighteen through twenty of the first count of the complaint set forth the causal relationship between Burich's behavior and the plaintiff's emotional distress. Whether the plaintiff can ultimately establish through evidence proximate cause is a question of fact not appropriately decided on a motion to strike. "[B]road allegations contained in . . . the plaintiffs' complaint, not addressed by any request to revise filed by the defendants, [are] sufficient to establish a cause of action sounding in intentional infliction of emotional distress . . . [and] should not . . . [be] stricken from the complaint." Bell v. Board of Education, 55 Conn. App. 400, 412,739 A.2d 321 (1999). Therefore, count one survives the defendants' motion to strike for failure to establish proximate cause.
 B Negligence
The defendants' motion to strike the second count of the complaint is based on the sole ground that it is a claim of medical malpractice directed against Spencer and Yale and, as such, must be accompanied by the statutory good faith certificate required by § 52-190a. In support of this argument, the defendants contend that the medical malpractice claim set forth in this count is that Spencer and Yale breached the standard of care customarily demonstrated by health care CT Page 5246 providers in the same line of practice by failing to supervise properly Burich or to provide the plaintiff with another nurse. (See Defendants' Revised Memorandum, pp. 3-4.) The plaintiff counters that the second count is based upon simple negligence and not medical malpractice and therefore is not required to be accompanied by a statutory good faith certificate.
Section 52-190a is applicable to negligence actions only if two conditions are met. First, the defendant must be a health care provider within the meaning of General Statutes § 52-184b.[2] Bruttomessov. Northeastern Connecticut Sexual Assault Crisis Services, Inc.,242 Conn. 1, 8-9, 698 A.2d 795 (1997) (holding that because § 52-190a
references General Statutes § 52-184c, which incorporates definition of health care provider under § 52-184b, that definition applies to § 52-190a). Second, § 52-190a applies only to actions sounding in medical malpractice, not those sounding in ordinary negligence. Trimelv. Lawrence Memorial Hospital Rehabilitation Center, 61 Conn. App. 353,356, 764 A.2d 203, cert. granted, 255 Conn. 948, 769 A.2d 64, appeal dismissed, 258 Conn. 711, 784 A.2d 889 (2001). Although the defendant's status as a health care provider is here unchallenged, § 52-190a
applies only if the plaintiff's action sounds in medical malpractice, not in ordinary negligence.[3] Id.
"[P]rofessional negligence or malpractice . . . [is] defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services." (Internal quotation marks omitted.) Santopietro v. New Haven,239 Conn. 207, 226, 682 A.2d 106 (1996). "[T]he relevant considerations in determining whether a claim sounds in medical malpractice are whether (1) the defendants are sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship and (3) the alleged negligence is substantially related to medical diagnosis or treatment and involved the exercise of medical judgment."Trimel v. Lawrence Memorial Hospital Rehabilitation Center, supra,61 Conn. App. 358.
In the case before the court, the plaintiff makes no claim that Spencer and/or Yale failed to use the care and skill ordinarily used by physicians or hospitals for a specified procedure at the time of her injuries, and thus she will not require expert medical testimony regarding standard of care. Badrigian v. Elmcrest Psychiatric Institute,Inc., 6 Conn. App. 383, 386, 505 A.2d 741 (1986). Accordingly, the second prong of the Trimel test has not been met. Further, the plaintiff's claims CT Page 5247 are unrelated to her medical diagnosis and treatment and her alleged injuries did not result from the exercise of medical judgment, thus failing to meet the third prong of Trimel.
In determining whether a claim is one in medical malpractice requiring a good faith certificate, "other trial courts have distinguished between actions against a health care provider sounding in simple negligence and those sounding in medical malpractice. A good faith certificate has not been required where the court determined that it was a simple negligence action." Smith v. Mediplex of Westport, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 159274 (March 25, 1998,D'Andrea, J.) (21 Conn.L.Rptr. 495, 496). The test applied by these courts in determining whether the defendant's misconduct was medical malpractice or simple negligence was first formulated in Badrigian v.Elmcrest Psychiatric Institute, supra, 6 Conn. App. 387, a case dealing with negligent failure to supervise a patient who was struck by an automobile while on his way to lunch. That case held that there is no medical malpractice where the jury "need not be guided by medical experts in determining" whether the defendant breached its duty of care to the patient and there are "no esoteric or uniquely medical issue[s] to be determined . . . nor any complex issue requiring specialized knowledge." (Internal quotation marks omitted.) Id.
A split of authority exists regarding whether the type of negligence alleged in the case before the court is related to medical diagnosis or treatment and involves the exercise of medical judgment. This split exists among trial court decisions dealing with negligent failure to supervise and protect the patient while in the defendant's care. InWilson v. Yale-New Haven Hospital, Superior Court, judicial district of New Haven at New Haven, Docket No. 444687 (March 26, 2001, Munro, J.), the court held that where the defendant failed to monitor the plaintiff (a stroke victim receiving 24-hour care and treatment) to prevent her from falling, "[t]he fact that [the] plaintiff may not have been actively participating in a specific treatment at the time of the injury is not dispositive." In that case, the court found medical malpractice. By contrast, the court determined, in Delaney v. Newington Children'sHospital, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 524063 (May 9, 1994, Wagner, J.). that ordinary negligence and not medical malpractice in the defendant's supervision of the minor plaintiff resulted in the plaintiff's sexual assault by a hospital roommate. Likewise, in DeJesus v. Veteran's Memorial MedicalCenter, Superior Court, judicial district of New Britain at New Britain, Docket No. 498385 (October 19, 2000, Kocay, J.) (28 Conn.L.Rptr. 522, 523), the court found that "[n]egligent supervision by health care providers constitutes ordinary negligence, not malpractice," where the defendant failed to secure the plaintiff to her bed to prevent her from CT Page 5248 falling.
Other situations involving failure to supervise and protect patients in custodial care have been held by the Superior Court to constitute ordinary negligence and not medical malpractice. See, e.g., Fallo v.McLean Assn., Inc., Superior Court, judicial district of New Britain at New Britain, Docket No. 499101 (July 17, 2001, Shapiro, J.) (30 Conn. L. Rptr. 217, 219) (where plaintiff's decedent wandered from her room in defendant's assisted living facility, entered unsecured stairwell and fell down the stairs injuring herself, "limited testimony as to the degree of self control of [the decedent] does not . . . convert an ordinary negligence case into a medical malpractice claim" (internal quotation marks omitted)); Beauvais v. Connecticut Subaccute Corp., Superior Court, judicial district of New Haven at Meriden, Docket No. 270390 (September 29, 2000, Levine, J.) (where plaintiff's decedent was assaulted in nursing home by unsupervised Alzheimer's patient, "[t]he court concludes that both the supervision of dangerous patients and the protection of patients from known dangers were custodial in nature and incidental to, and not an integral part of, the medical treatment being provided by the home to the decedent"); Mason v. Rockville GeneralHospital, Superior Court, judicial district of Tolland at Rockville, Docket No. 68416 (January 19, 2000. Sullivan, J.) (26 Conn.L.Rptr. 239) (where minor plaintiff fell off stretcher in defendant's emergency room "limited testimony as to the degree of self control of this child does not . . . convert an ordinary negligence case into a medical malpractice claim"); Agosto v. Midstate Medical Center, Superior Court, judicial district of New Haven at Meriden, Docket No. 266516 (December 14, 1999,Levine, J.) (26 Conn.L.Rptr. 145) (where minor plaintiff sustained injuries when he fell out of crib, "the provision and maintenance of a crib for the child was incidental to, and not an integral part of, the medical treatment being provided to the child by the defendant");Pascarelli v. Corning Clinical Laboratories, Inc., supra,19 Conn. L. Rptr. 84
(where defendant erroneously informed plaintiff that plaintiff was HIV positive "there is no uniquely medical issue to be determined");Sloan v. St. Francis Hospital and Medical Center, Superior Court, judicial district of New London at New London, Docket No. 536439 (November 27, 1996, Hendel, J.) (18 Conn.L.Rptr. 288) (plaintiff's injuries sustained when gurney which she was being transported to her hospital room struck wall due to its being propelled at high rate of speed).
The foregoing decisions support the majority view that limited medical testimony as to a patient's degree of self control to demonstrate negligence in the supervision or custodial care of the patient or in the failure to protect a patient from known dangers is insufficient to transform a case of ordinary negligence into medical malpractice in CT Page 5249 satisfaction of the third prong of Trimel v. Lawrence Memorial HospitalRehabilitation Center, supra, 61 Conn. App. 358. Because the second count of the complaint does not contain allegations that Spencer or Yale were administering medical treatment to the plaintiff in the exercise of medical judgment at the time of Burich's assaults upon the plaintiff, the motion to strike the second count of the complaint is denied.
 C Breach of Implied Contract
The defendants move to strike count three on the grounds that the plaintiff has failed to attach the statutory good faith certificate and that the plaintiff has not sufficiently pleaded a claim for breach of an implied contract. With regard to the latter ground, the defendants argue that in order for a breach of contract claim in a medical malpractice action to be viable, the plaintiff must plead that the defendants made a specific promise to the patient about the treatment or the result. The defendants further argue that there is no distinction between the allegations of breach of contract in count three and the allegations of negligence in count two, and, therefore, the contract claim is really a tort claim "`cloaked in contract garb.'" (Defendants' Memorandum, p. 9 and n. 1, quoting Gazo v. Stamford, supra, 255 Conn. 266.)
As for the defendants' first ground, the allegations of count three, like the allegations of the count two, do not sound in medical malpractice; therefore, a statutory good faith certificate is no more essential to the count three than it is to the count two. As for the second ground, however, the court agrees with the defendants that the plaintiff has failed to allege sufficiently a cause of action for breach of implied contract.
The plaintiff alleges in count three that the defendants, Spencer and Yale, "had implied contracts with the Plaintiff that she would be treated in a medically and professionally appropriate manner" and that these defendants breached their respective implied contracts by "fail[ing] to safeguard the Plaintiff from the inappropriate behaviors of the Defendant Burich. . . ." (Count three, ¶¶ 30-33.) The factual basis for count three consists of incorporated allegations from count two that the doctor and the hospital "assigned and/or consented to the assignment of the Defendant Burich to be the primary nurse during the treatment of the Plaintiff" despite the fact that they "knew or should have known that the Defendant Burich had previous complaints made against him by female patients regarding his conduct." (Count three, ¶¶ 24-25.) The plaintiff alleges that these defendants "breached their respective duties of care to the Plaintiff by failing to assign either a female nurse or a male CT Page 5250 nurse with no prior complaints against him to the Plaintiff's case." (Count three, ¶ 29.) As a result, the plaintiff seeks damages for emotional distress and mental anguish, as well as medical bills she has incurred associated with her psychological treatment for such emotional distress and mental anguish. (Count three, ¶¶ 19, 34.)
In Gazo v. Stamford, supra, 255 Conn. 262-68, the court dealt with a similar claim that the plaintiff had really pleaded a tort claim as a third party beneficiary breach of contract claim. The court stated that "[a]lthough . . . in reviewing a motion to strike, the court must take the plaintiff's allegations at face value, that rule is not absolute. We have, on occasion, looked beyond the specific language of a pleading to discern its real underlying basis. . . . In . . . an appropriate case . . . [the court may] pierce the pleading veil." (Citation omitted.) Id., 262-63. "Just as [p]utting a constitutional tag on a nonconstitutional claim will no more change its essential character than calling a bull a cow will change its gender . . . putting a contract tag on a tort claim will not change its essential character. An action in contract is for the breach of a duty arising out of a contract; an action in tort is for a breach of a duty imposed by law. [W]hen the claim is one for personal injury, the decision usually has been that the gravamen of the action is the misconduct and the damage, and that it is essentially one of tort, which the plaintiff cannot alter by his pleading." (Citation omitted; internal quotation marks omitted.) Id., 263.
To aid in its determination of whether the plaintiff had sufficiently pleaded a breach of contract claim, the court focused on the damages claimed by the plaintiff, noting that "[t]he usual recovery for breach of a contract is the contract price or the lost profits therefrom." Id., 265. The court found that "[t]he plaintiff does not seek the contract price. . . . Instead, the plaintiff seeks recovery for his physical and mental pain and suffering, lost wages and medical bills resulting from [the defendant's] negligence. Although contract damages ordinarily consist of consequential losses . . . they ordinarily do not encompass such losses as pain and suffering. It is clear, therefore, that although the plaintiff has cast this claim in contractual language, in essence he seeks a tort recovery." (Citations omitted.) Id., 265-66. Thus, the court affirmed the trial court's granting of the motion to strike the contract claim. Id., 268.[4]
In the present case, although the plaintiff conclusorily alleges the existence of an implied contract and that the defendants breached it, the specific factual allegations upon which this claim is based sound in negligence. This is virtually a foregone conclusion simply based on the fact that count three does no more substantively than incorporate the allegations of count two — the negligence claim. It is evident, CT Page 5251 moreover, that the injuries allegedly sustained are mental distress and hospital bills incurred in treating such mental distress. These are generally recoverable as tort damages, not contract damages. Gazo v.Stamford, supra, 255 Conn. 265-66; see also Gardner v. St. Paul CatholicHigh School, Inc., Superior Court, judicial district of Waterbury, Docket No. 143514 (November 15, 2001, Doherty, J.) (30 Conn.L.Rptr. 691, 695) (damages for emotional distress not recoverable on breach of contract claim); Smith v. Bridgeport Futures Initiative, Inc., Superior Court, judicial district of Fairfield, Docket No. 326697 (August 13, 1996,Levin, J.) (17 Conn.L.Rptr. 412, 413) ("`Mental suffering caused by breach of contract, although it may be a real injury, is not generally allowed as a basis for compensation in contractual actions.'"); Dowlingv. First Federal Bank, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 533172 (June 30, 1995, Corradino, J.) (granting motion to strike claim seeking emotional distress damages resulting from breach of contract). Thus, the court agrees with the defendants that the allegations of count three "[inform] us that the plaintiff's contract claim is in reality [her] negligence claim cloaked in contract garb." Gazo v. Stamford, supra, 255 Conn. 266. Accordingly, the motion to strike count three is granted.[5]
 III CONCLUSION
Based on the foregoing, the defendants' motion to strike counts one and two is denied. The motion to strike count three is granted.
BY THE COURT
Peter Emmett Wiese, Judge