Patrick **FREEMAN** and Margaret Freeman, Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

**Civil No. 3:15-cv-594 (AWT)**

United States District Court, D. Connecticut.

Signed February 2, 2016

John W.L. Walshe, John Walshe & Associates, Bridgeport, CT, for Plaintiffs.

David Christopher Nelson, Michelle Lynn McConaghy, U.S. Attorney's Office, New Haven, CT, for Defendant.

## RULING ON MOTION TO DISMISS

Alvin W. Thompson, United States District Judge

The plaintiffs bring this action under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. (the "FTCA") seeking compensatory damages and attorneys' fees. The Complaint has two counts. The First Count is brought by Patrick Freeman and alleges negligence by Department of Veterans Affairs personnel acting on behalf of the United States. The Second Count is a derivative loss of consortium claim brought by Patrick Freeman's wife, Margaret Freeman.

## I. FACTUAL BACKGROUND

"The complaint, which [the court] must accept as true for purposes of testing its sufficiency, alleges the following circumstances." Monsky v. Moraghan, 127 F.3d 243, 244 (2d Cir.1997).

From 2007 to 2011, Patrick Freeman ("Mr. Freeman") was treated at the Department of Veterans Affairs ("DVA") hospital in West Haven, Connecticut. During that time, he was administered a medication called Simvastatin by DVA personnel. The plaintiff alleges that the DVA personnel administered a dose that exceeded the daily maximum dosage, despite knowing the correct dosage. As a result of being administered an "excessive amount of Simvastatin," Mr. Freeman suffers from "chronic severe myopathy" in his arms and legs, uncontrollable hand tremors, memory loss, muscle spasms, muscle loss, extreme difficulty in walking and loss of strength. (Second Amended Complaint (Doc. No. 8) at ¶ 18.) Consequently, he is unable to work or complete several of his ordinary daily tasks. Mr. Freeman has been diagnosed with Myotonic Dystrophy. Margaret Freeman ("Mrs. Freeman") left her employment to care for her husband, and she alleges that she is no longer employable.

On December 30, 2011 Mr. Freeman, proceeding pro se, submitted a Standard Form 95 ("SF-95") claim to the DVA alleging negligence by DVA personnel. His claim was denied on May 23, 2012, and reconsideration was denied on July 25, 2012. On October 1, 2013, Mr. Freeman, through counsel, submitted a second SF-95 claim. This claim was rejected on October 11, 2013 because the VA found that it was duplicative of his first claim. On October 1, 2013, Mrs. Freeman, through counsel, also submitted a SF-95 claim to the DVA alleging loss of consortium. Her claim was denied on April 1, 2014, and reconsideration was denied on October 24, 2014.

Having exhausted their administrative remedies, the plaintiffs brought this action on April 23, 2015. In the First Count, Mr. Freeman alleges:

The actions of the United States through its DVA personnel . . . constitute negligence in misdiagnosis and improper prescribing of a controlled medication which caused an irreversible loss

of muscle function all as a result of that negligence.

(Second Amended Complaint at ¶ 23.) In the Second Count, Mrs. Freeman alleges that the negligence alleged in the First Count "caused the incapacitation of Plaintiff Patrick Freeman" and that this incapacitation "necessitated [her] assumption of the role of her husband's principal caregiver resulting in her inability to carry on her own gainful employment." (Second Amended Complaint at ¶¶ 25-26.)

## II. LEGAL STANDARD

The defendants move to dismiss this case for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5) and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

### 1. Federal Rule of Civil Procedure 12(b)(5)

A defendant may move to dismiss a complaint for insufficient service of process pursuant to Rule 12(b)(5). In assessing a Rule 12(b)(5) motion, a court must look to Rule 4, which governs the content, issuance, and service of a summons. Under Federal Rule of Civil Procedure 4(m):

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Id. Prior to the 2015 Amendments to the Federal Rules of Civil Procedure, the time period to serve the defendant was 120 days. This action was filed prior to the effective date of the date of the Amendments, and the court does not find that it would be just or practicable to apply the new 90-day deadline. See Rules of Civil Procedure, available at htttp://www.supremecourt.gov/orders/courtorders/frcv15%28update%29_1823.pdf (April 29, 2015) ("The foregoing amendments to the Federal Rules of Civil Procedure shall take effect on December 1, 2015, and shall govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending."). Accordingly, the court applies the 120-day deadline to this case.

■ "[W]hen a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." Dickerson v. Napolitano, 604 F.3d 732, 752 (2d Cir.2010) (alteration in original) (quoting Burda Media, Inc. v. Viertel, 417 F.3d 292, 298 (2d Cir.2005)).

### 2. Federal Rule of Civil Procedure 12(b)(6)

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 550, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)

(quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 1974. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dept. Stores Co., 34 F.Supp.2d 130, 131 (D.Conn.1999) (quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir.1984)). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F.Supp. 784, 786 (D.Conn.1990) (citing Scheuer, 416 U.S. at 232, 94 S.Ct. 1683).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir.1993).

### III. DISCUSSION

Because the Second Count is a derivative claim dependent on the viability of the First Count, the court first addresses the defendant's arguments for dismissal of the First Count pursuant to Rule 12(b)(5) and Rule 12(b)(6).

### A. First Count—Rule 12(b)(5)

■ The FTCA provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674. "[T]he FTCA directs courts to consult state law to determine whether the government is liable for the torts of its employees." Liranzo v. United States, 690 F.3d 78, 86 (2d Cir.2012) (citing FDIC v. Meyer, 510 U.S. 471, 478, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) ("[The] law of the State [is] the source of substantive liability under the FTCA." (alterations in original))). Under Connecticut law, prior to filing a claim for medical malpractice, a plaintiff must first conduct a "reasonable inquiry . . . to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant." Conn. Gen. Stat. Ann. § 52–190a(a). Furthermore,

> [t]he complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant.

Conn. Gen. Stat. § 52–190a(a). "The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for dismissal of the action." Conn. Gen. Stat. § 52–190a(c). A federal court may dismiss a case for failure to file a good faith certificate within 120 days of the complaint's filing pursuant to Rule 4(m). See Slocum v. U.S. Dep't of Veterans Affairs, No. 3:13–CV–501, 2014 WL 4161985, at *3 (D.Conn. Aug. 19, 2014) ("Here, Slocum timely filed a FTCA claim, but the good faith certificate was not filed with the complaint or served on the defendant within 120 days of the complaint's filing. Therefore, I could have dismissed

the complaint without prejudice pursuant to Rule 4(m).")

■ The defendant argues that because the plaintiffs did not file a good faith certificate, this action should be dismissed pursuant to Rule 12(b)(5) for insufficient service. The court agrees.

■ Mr. Freeman's claim alleges "negligence" and not "medical malpractice." However, in evaluating the pleading, the court "is not bound by the label affixed to that pleading by the party." Simoneau v. Stryker Corp., 3:13–cv–1200, 2014 WL 1289419, at *3 (D.Conn. Mar. 31, 2014) (quoting Votre v. Cnty. Obstetrics & Gynecology Grp., P.C., 113 Conn.App. 569, 576, 966 A.2d 813 (2009)). "Simply referring to a claim as 'negligence' is not a 'shibboleth' to avoid meeting the statutory requirements [of section 52–190a]." Id. (quoting Larson v. Brighten Gardens, 7:08–cv–455, 2009 WL 103372, *2 (D.Conn. Jan. 14, 2009)).

> The classification of a negligence claim as either medical malpractice or ordinary negligence requires a court to review closely the circumstances under which the alleged negligence occurred. [P]rofessional negligence or malpractice ... [is] defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services." (Emphasis in original; internal quotation marks omitted.) Trimel v. Lawrence & Memorial Hospital Rehabilitation Center, 61 Conn.App. 353, 357–58, 764 A.2d 203, appeal dismissed, 258 Conn. 711, 784 A.2d 889 (2001); Santopietro v. New Haven, 239 Conn. 207, 226, 682 A.2d 106 (1996). "Furthermore, malpractice presupposes some improper conduct in the treatment or operative skill [or] ... the failure to exercise requisite medical skill.... From those definitions, we conclude that the relevant considerations in determining whether a claim sounds in medical malpractice are whether (1) the defendants are sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship, and (3) the alleged negligence is substantially related to medical diagnosis or treatment and involved the exercise of medical judgment." (Citation omitted; emphasis in original; internal quotation marks omitted.) Trimel v. Lawrence & Memorial Hospital Rehabilitation Center, supra, at 358, 764 A.2d 203.

Gold v. Greenwich Hosp. Ass'n., 262 Conn. 248, 254, 811 A.2d 1266 (2002) (alterations in original) (emphasis in original); see also Gallinari v. Kloth, No. 3:15–cv–872, 148 F.Supp.3d 202, 2015 WL 7758835 (D.Conn. Dec. 1, 2015).

The court concludes that the First Count is a claim alleging medical malpractice. Mr. Freeman alleges "negligence in misdiagnosis and improper prescribing of a controlled medication." (Second Amended Complaint at ¶ 23.) This claim satisfies the three-part test in Gold v. Greenwich Hospital. First, the defendant is sued in its capacity as a provider of medical care at the DVA hospital. Second, the negligence alleged, i.e. misdiagnosis and improper prescription, is of a specialized medical nature that arises out of the medical professional-patient relationship. Third, diagnosis and the prescription of medical care are acts that are substantially related to medical treatment and involve the exercise of medical judgment. Because the court finds that the First Count is a medical malpractice claim, Mr. Freeman is required to file a good faith certificate.

■ It is undisputed that the plaintiffs have not filed a good faith certificate as required under Connecticut law. In response to the defendant's motion to dismiss, the plaintiffs ask the court to extend the time for filing the certificate, pursuant to Rule 4(m). The Second Circuit has recognized that though "a district court must grant an extension where good cause is shown, it may also grant a discretionary extension absent such showing." Counter Terrorist Grp. U.S. v. New York Magazine, 374 Fed.Appx. 233, 234 (2d Cir.2010).

The plaintiffs have not demonstrated good cause for their failure to file a good faith certificate, nor does the court choose to exercise its discretion to extend the filing deadline. To the extent that the plaintiffs offer any explanation for their failure to file a good faith certificate, they assert that they did not get Mr. Freeman's medical record until mid-August 2015 and that the volume of records will "hinder[ ] the retention of a medical expert in the near future." (Plaintiff's Memorandum of Law in Opposition (Doc. No. 19) ("Opposition") at 6.) They also argue that "Mr. Freeman made a good faith effort to discover his condition and its cause all by himself but was prevented from doing so by the VA's action or inaction." (Opposition at 7.)

The court finds both of these explanations unpersuasive. With respect to the first argument, the court notes that the purpose of the statutory requirement that the complaint, or other initial pleading with respect to a defendant, contain a good faith certificate is to ensure that the plaintiff conducts a "reasonable inquiry" into the basis for the claims before he initiates an action and brings a defendant into court. See Morgan v. Hartford Hosp., 301 Conn. 388, 398, 21 A.3d 451 (2011) ("The purpose of the certificate is to evidence a plaintiff's good faith derived from the precomplaint inquiry. It serves as an assurance to a defendant that a plaintiff has in fact made a reasonable precomplaint inquiry giving him a good faith belief in the defendant's negligence." (quoting LeConche v. Elligers, 215 Conn. 701, 711, 579 A.2d 1 (1990))). Here, the plaintiffs were not even in possession of Mr. Freeman's medical records until August 20, 2015, 119 days after commencing this suit. (See Motion for Continuance (Doc. No. 16).) Granting an extension at this time would undermine the purpose of the Connecticut statute. With respect to the VA's "action or inaction" preventing Mr. Freeman from discovering his condition, the plaintiffs do not identify these actions or inactions with any specificity or how they prevented them from being able to file a good faith certificate.

Although the plaintiffs now contend they faced these challenges, they never filed a motion to extend the deadline for filing the good faith certificate. Accordingly, the court does not find that there is a compelling reason to exercise its discretion and grant them an extension of the deadline for filing the good faith certificate now. See Zapata v. City of New York, 502 F.3d 192, 197 (2d. Cir.2007) (affirming district court's dismissal of a case where the plaintiff "not only failed to show good cause but advanced no colorable excuse whatsoever for his neglect"); Gerena v. Korb, 617 F.3d 197, 201 (2d Cir.2010) (affirming district court's dismissal of a case where the plaintiff served a defendant outside the 120-day time period required by Rule 4(m) and the plaintiff had neither sought nor received an extension of time to serve the defendant); Bogle–Assegai v. Connecticut, 470 F.3d 498, 508–509 (2d Cir.2006) (affirming a district court's dismissal for failure to timely effect service of process under Rule 4(m) where the plaintiff "made no effort to show good cause for her failure and never requested an extension of time").

Finally, "even if the [c]ourt were to exercise its discretion to overlook the deficiencies in service of process, Defendant's Motion to Dismiss would be granted on other grounds," Hailey v. Connecticut, No. 3:10–cv–1787, 2011 WL 6209748, at *3 (D.Conn. Dec. 14, 2011), as discussed below.

## B. First Count—Rule 12(b)(6)

The FTCA provides that "[a] tort claim against the United States shall be forever barred ... unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401. Mr. Freeman was notified of this deadline in the July 25, 2012 letter of denial for his first SF-95 claim. (See Motion to Dismiss, Exhibit 2 ("Further action on the matter may be instituted in accordance with the FTCA, section 1346(b) and 2671-2680, title 28, United States Code, which provides, in effect, that a tort claim that is administratively denied may be presented to a Federal district court for judicial consideration. Such a suit must be initiated, however, within 6 months after the date of mailing of this notice of final decision as shown by the date of this letter (section 2401(b), title28, United States Code).").)

■ The defendant argues that Mr. Freeman's second SF-95 claim was duplicative of the first and that a claimant cannot restart the six-month clock by simply filing a duplicative claim. Thus, the defendant argues that the six-month clock began running on July 25, 2012, when the plaintiff received final denial of his first SF-95 claim, and because the plaintiff did not initiate this action in federal court within the six-month window, he is barred from doing so now.

The court agrees that a claimant cannot restart the six-month clock simply by filing a second, duplicative claim. "[O]ne bite at the apple is all that the FTCA's claim-filing scheme allows." Roman–Cancel v. U.S., 613 F.3d 37, 42 (1st Cir.2010). The FTCA's six-month bar cannot be avoided simply by filing a new claim and restarting the clock. See Willis v. United States, 719 F.2d 608 (2d Cir.1983) ("If Congress mandated that suit be brought within six months after administrative denial of a claim, as we hold that it did, the bar cannot be avoided by starting all over again."); Roman–Cancel, 613 F.3d at 42 ("it would be pointless for a court to allow a claimant an opportunity to reopen the FTCA's limitations window by the simple expedient re-filing a claim to supplant an earlier, functionally equivalent claim on which the window had shut. In the bargain, honoring a re-filed claim would frustrate the goal of the FTCA's filing deadlines"). In accordance with these principles, the court concludes that a second, duplicative claim cannot restart the six-month clock.

The court also agrees that Mr. Freeman's second SF-95 claim was duplicative of his first SF-95 claim.

A claim is a notice in writing to the appropriate Federal agency of an incident giving rise to Government liability under the FTCA. It must include a demand for money damages in a definite sum for property damage, personal injury, or death alleged to have occurred by reason of the incident.

32 C.F.R. § 750.26(c). In this case, Mr. Freeman's SF-95 claims are duplicative because the incident allegedly giving rise to government liability under the FTCA is the same in both claims.

In his first SF-95 claim, Mr. Freeman alleges that as a result of being "over-prescribed Simvastatin @ 80mg," he now suffers from chronic, sever myopathy in his extremities; hand spasms and tremors; confusion; memory loss; and muscle pain. (Motion to Dismiss, Exhibit 1 at 1.) Conse-

quently, he is unable to lift things, climb stairs, or write. In his second SF-95 claim, he alleges that he was "negligently misdiagnosed" and that from 2007 to 2011 he was administered an "excessive dosage (80mg) of [Simvastatin]" which caused to irreversible "[l]oss of muscle function in the extremities and elsewhere." (Motion to Dismiss, Exhibit 4 at 1.)

In both claims, the underlying incident giving rise to liability is the allegedly negligent prescription and administration of an 80mg dose of Simvastatin. This administration took place from 2007 to 2011, a time period that concluded prior to Mr. Freeman's filing of his first S-95 claim. Accordingly, the court has no reason to believe that any new incidents took place between the denial of his first claim and the filing of his second claim. To the extent that Mr. Freeman's SF-95 claims are different, the first claim simply speaks in terms of symptoms whereas the second claim speaks in terms of a diagnosis. Despite this difference, the court concludes that because the underlying incident is the same in both SF-95 claims, they are duplicative. See Roman–Cancel, 613 F.3d at 42 ("The dilemma created by the duplicative administrative claims is more apparent than real. The papers in the case describe only a single injury: the (allegedly negligent) reduction of the plaintiff's disability benefits. . . . [T]he only inference that can be drawn is that both claims relate to that injury. See 32 C.F.R. § 750.26(c) ('A claim is a notice . . . of an incident giving rise to Government liability . . .') From a legal standpoint, then, the second claim is the functional equivalent of the first.")

Accordingly, the six-month timeframe in which Mr. Freeman could have brought this suit began on July 25, 2012. Since he did not present his claim in federal court within six months of that date, he is barred from doing so now.

**C. Second Count**

Under Connecticut law, loss of consortium is a derivative claim and is "dependent for its assertion on the legal viability of the cause of action in the injured party." Champagne v. Raybestos–Manhattan, Inc., 212 Conn. 509, 563–64, 562 A.2d 1100 (1989); Izzo v. Colonial Penn Ins. Co., 203 Conn. 305, 312, 524 A.2d 641 (1987) ("Loss of consortium, although a separate cause of action, is not truly independent, but rather derivative and inextricably attached to the claim of the injured spouse."). Accordingly, Mrs. Freeman's claim depends on the legal existence of Mr. Freeman's claim, and to the extent that his claim is dismissed so, too, is hers. See e.g., Falls v. Novartis Pharmaceuticals Corp., No. 3:13–cv–270, 2014 WL 3810246, at *5 (D.Conn. August 1, 2014) ("Since Mrs. Falls's loss of consortium claim is derivative of Mr. Falls's claims, it must be dismissed as well."); Gill v. American Red Cross, No. 3:12–cv–348, 2013 WL 1149951 (D.Conn. Mar. 19, 2013) (dismissing wrongful death claim and loss of consortium claim for failure to file a good faith certificate).

Therefore, because the court concludes that Mr. Freeman's claim does not survive the instant motion to dismiss, neither does Mrs. Freeman's claim.

**IV. CONCLUSION**

For the reasons set forth above, the Defendant's Motion to Dismiss the Plaintiffs' Second Amended Complaint (Doc. No. 12) is hereby GRANTED.

The Clerk shall close this case.

It is so ordered.