PATRICIA L. VOTRE *v.* COUNTY OBSTETRICS AND
GYNECOLOGY GROUP, P.C., ET AL.
(AC 29010)

Flynn, C. J., and Beach and West, Js.

Argued December 4, 2008—officially released April 7, 2009

*Joseph B. Williams*, for the appellant (plaintiff).

*Kevin M. Smith*, with whom was *Jeffrey R. Babbin*, for the appellees (defendants).

*Opinion*

FLYNN, C. J. This case arises out of events surrounding the tragic loss of a child. If there are those of us who have not been the parent, we have all been the child. That experience teaches us that there is no closer human bond nor a more painful loss. Although the enormity of such a loss is easily comprehensible to anyone with knowledge of the human condition, the trial judge, armed with such knowledge, nonetheless was not relieved of his obligation to apply the law reasonably applicable to the plaintiff's complaint and the state of the pleadings. We are called on first to decide whether the court properly determined that the allegations of the plaintiff mother's complaint involve the negligence of a health care provider and then, whether the court properly dismissed the action for lack of a written opinion of a similar health care provider. Because factual allegations of each count of the complaint required proof of medical negligence contrary to the applicable standard of care, and the complaint lacked the requisite written and signed opinion of a similar health care provider, we conclude that the court properly dismissed the case.

The plaintiff, Patricia L. Votre, appeals from the judgment of the trial court dismissing her complaint against the defendants, County Obstetrics & Gynecology Group, P.C., Adina R. Chelouche, Ljiljana Plisic and Scott E. Casper. The court determined that the plaintiff's complaint, which contained claims of infliction of emotional distress, breach of contract and misrepresentation, sounded in medical malpractice. Because the plaintiff failed to include a good faith certificate and an opinion of a similar health care provider, as required in medical malpractice cases by General Statutes

§ 52-190a (a),[1] the court dismissed the complaint.[2] On appeal, the plaintiff claims that (1) the court improperly characterized her complaint as a medical malpractice claim and (2) a motion to dismiss was an improper procedural vehicle for the defendants to attack the complaint.[3] We affirm the judgment of the trial court.

The plaintiff's complaint contained the following allegations. The plaintiff was a patient of Chelouche, Casper

[1] General Statutes § 52-190a (a) provides in relevant part: "No civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death . . . whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant. To show the existence of such good faith, the claimant or the claimant's attorney, and any apportionment complainant or the apportionment complainant's attorney, shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. . . . The claimant or the claimant's attorney, and any apportionment complainant or apportionment complainant's attorney, shall retain the original written opinion and shall attach a copy of such written opinion, with the name and signature of the similar health care provider expunged, to such certificate. . . ."

[2] Throughout its memorandum of decision, the court refers to the plaintiff's failure to file both a good faith certificate and a written opinion of a similar health care provider as the basis for its granting of the defendants' motion to dismiss pursuant to General Statutes § 52-190a (c). We note that § 52-190a (c) specifically provides that "[t]he failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action." General Statutes § 52-190a (c).

[3] The plaintiff's appeal also contained a claim that the court's decision was voidable because it was not rendered within 120 days of the date that the court heard oral argument on the defendants' motion to dismiss. The plaintiff withdrew this claim at oral argument before this court.

and Plisic, physicians specializing in obstetrics and gynecology, and their medical practice, County Obstetrics & Gynecology Group, P.C. On July 14, 2003, the defendants placed the plaintiff on bed rest at Yale-New Haven Hospital due to complications with her pregnancy. The plaintiff was considered a "high risk patient" due to a previous pregnancy that ended in the death of her child and a diagnosis of an incompetent cervix. Following several days of bed rest, the plaintiff developed a fever, lower back pains and the sensation of fluid by release.

Prior to and during the plaintiff's hospitalization, the plaintiff requested that the defendants bring in physicians from Yale-New Haven Hospital's high risk pregnancy group to consult and to take over her treatment. At some point, the plaintiff, in fact, did consult with the Yale high risk group,[4] resulting in the defendants' reception of a written consultation report advising the defendants in their care of the plaintiff. The defendants concealed the report from the plaintiff. Between July 14 and 26, 2003, the plaintiff's condition worsened, as the plaintiff at various times developed symptoms of premature labor, fever, infection and back pain. Despite the presence of these symptoms and the plaintiff's repeated requests, the defendants refused to turn over her care to the Yale high risk group or to treat her in accordance with the group's recommendations. The defendants at various times represented to the plaintiff that she did not need high risk physicians, that the Yale high risk group would participate in her case and that the defendants would follow the recommendations of the Yale high risk group.

On July 26, 2003, the plaintiff's son was born prematurely. He survived fifty-one days and died September

[4] The complaint is unclear as to when precisely the plaintiff consulted with the Yale high risk group.

17, 2003. The plaintiff filed an eight count complaint against the defendants on August 2, 2006. The complaint stated claims for negligent, reckless and intentional infliction of emotional distress, breach of contract and negligent, reckless and intentional misrepresentation on the basis of the defendants' care of the plaintiff during her pregnancy. Specifically, the plaintiff claimed that count one sounded in negligent infliction of emotional distress; count two sounded in intentional infliction of emotional distress; count three sounded in reckless infliction of emotional distress; count four sounded in breach of contract; count six sounded in intentional misrepresentation; count seven sounded in reckless misrepresentation; and count eight sounded in negligent misrepresentation. The plaintiff's fifth count purported to state a claim for both intentional and reckless conduct, though these concepts are in conflict because with reckless conduct, an actor does not intend the result of his action.

Significantly, paragraphs nineteen and twenty of the complaint included factual allegations that implicated deviation from professional medical standards. Paragraph nineteen of the first count, incorporated into each of the subsequent counts of the complaint, alleged in part that the defendants disregarded "the recommendation of [the] high risk physicians during the [p]laintiff's stay at the hospital." Paragraph twenty of the first count, also incorporated into each of the subsequent counts of the complaint, alleged in part that the defendants disregarded the plaintiff's requests concerning her treatment "for no valid medical reasons . . . ." The complaint did not include a good faith certificate and written opinion of a similar health care provider as described in § 52-190a (a).

On September 20, 2006, the defendants filed a motion to dismiss the complaint for lack of subject matter jurisdiction. The defendants argued that the plaintiff's

claim was a claim of medical malpractice requiring a certificate of good faith and a written opinion of a similar health care provider under § 52-190a. The plaintiff maintained that her claims sounded in ordinary tort[5] and breach of contract, not medical malpractice, and thus, no certificate or written opinion was necessary. The court granted the defendants' motion, finding that the complaint sounded in medical malpractice and that the plaintiff's failure to comply with the requirements of § 52-190a (a) deprived the court of subject matter jurisdiction. After the court denied her motion to reargue, the plaintiff filed the present appeal.

I

The plaintiff first claims that the court improperly characterized her complaint as sounding in medical malpractice rather than ordinary tort and breach of contract. She argues that her complaint "seeks damages for the falsehoods and broken promises of the defendants, not only their failure to refer the patient as promised." She emphasizes that her complaint does not "allege a breach of the standard of care or damages from a breach" of the standard and that the damages she alleges are due to the emotional distress she suffered as a result of the defendants' actions. We agree that the complaint involves allegations of broken promises but disagree with the plaintiff's claim that the court improperly characterized the complaint as sounding in medical negligence.

We begin with the appropriate standard of review. "When the facts relevant to an issue are not in dispute, this court's task is limited to a determination of whether, on the basis of those facts, the trial court's conclusions

---

[5] The term "ordinary tort" is used in this opinion to distinguish a cause of action sounding in intentional, negligent or reckless conduct, such as infliction of emotional distress, from a claim sounding in medical negligence or malpractice.

of law are legally and logically correct." (Internal quotation marks omitted.) *Scoville* v. *Shop-Rite Supermarkets, Inc.*, 86 Conn. App. 426, 430, 863 A.2d 211 (2004), cert. denied, 272 Conn. 921, 867 A.2d 838 (2005). "[T]he interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary." (Internal quotation marks omitted.) *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 559, 864 A.2d 1 (2005). Furthermore, in determining the nature of a pleading filed by a party, we are not bound by the label affixed to that pleading by the party. *Redding* v. *Elfire, LLC*, 98 Conn. App. 808, 818, 911 A.2d 1141 (2006).

"The classification of a negligence claim as either medical malpractice or ordinary negligence requires a court to review closely the circumstances under which the alleged negligence occurred. [P]rofessional negligence or malpractice . . . [is] defined as the *failure of one rendering professional services* to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services. . . . Furthermore, malpractice presupposes some *improper conduct in the treatment or operative skill* [or] . . . the failure to exercise requisite medical skill . . . . From those definitions, we conclude that the relevant considerations in determining whether a claim sounds in medical malpractice are whether (1) the defendants are sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship, and (3) the alleged negligence is substantially related to medical diagnosis or treatment and involved the exercise of medical judgment." (Emphasis in original; internal quotation marks

omitted.) *Boone* v. *William W. Backus Hospital*, supra, 272 Conn. 562–63.

In her reply brief, the plaintiff concedes that the first prong of the aforementioned test is met here: the defendants are sued in their capacities as medical professionals. However, she contends that neither the second nor the third prong is satisfied. As to the second prong, the plaintiff argues that "[n]ot telling the truth . . . concealing documents, and failing to listen are obviously not of a 'specialized medical nature.' " Concerning the third prong, the plaintiff maintains that the complaint alleges only failures and omissions on the part of the defendants unrelated to medical diagnosis or treatment or the exercise of medical judgment. We cannot agree with the plaintiff's arguments.

At the heart of the plaintiff's complaint against the defendants is the defendants' failure to consult the Yale high risk group concerning the plaintiff's case or to refer the plaintiff to the group. Indeed, every count of the complaint, whether labeled intentional, reckless or negligent conduct or breach of contract, alleges that the defendants disregarded "the recommendation of [the] high risk physicians during the [p]laintiff's stay at the hospital" and refused the plaintiff's requests "for no valid medical reasons . . . ." The claim certainly arises out of the professional-patient relationship between the defendants and the plaintiff, as the facts underlying the claim occurred solely in the context of the defendants' ongoing medical treatment of the plaintiff. The claim is of a "specialized medical nature" because it directly involves the plaintiff's medical condition: her high risk pregnancy. To decide the issues presented by the plaintiff's complaint, a jury would require expert medical testimony. This is because the issues, including the proper scope of the relationship between a physician and his patient, the appropriate standard of care, which is the measure of the defendants' duty

to the plaintiff, and whether the defendants' actions breached that standard, are beyond the knowledge of the ordinary layperson. See *Gold* v. *Greenwich Hospital Assn.*, 262 Conn. 248, 255, 811 A.2d 1266 (2002) (expert testimony generally necessary in medical malpractice actions to establish relevant standard of care and breach of standard).

The defendants' alleged acts also substantially are related to their medical diagnosis and treatment of the plaintiff and involved the exercise of their medical judgment. We agree with the court's statement that "whether or when the plaintiff needed a high risk physician during her hospitalization is a question involving the exercise of medical judgment and . . . could not be determined by [a] fact [finder] without expert testimony. Similarly, whether the defendants followed the recommendations from the Yale high risk group is a question that is also substantially related to the plaintiff's treatment and involves medical judgment and . . . could not be determined without the guidance of specialized knowledge." Confronted with the plaintiff's worsening medical situation, the defendants were required to diagnose and treat the plaintiff's symptoms using their medical judgment. Given the circumstances, this included consideration of the merits of consulting with the Yale high risk group or referring the plaintiff to that group according to her stated wishes and their potential effect on her well-being and that of her child. It also included evaluation of the Yale high risk group's recommendations and whether valid medical reasons supported the defendants' actions. The actions that form the basis of the plaintiff's claims against the defendants inherently involve the exercise of their medical judgment.

In addressing the plaintiff's claim, we find persuasive the reasoning of the New Jersey Supreme Court in the case of *Couri* v. *Gardner*, 173 N.J. 328, 801 A.2d 1134

(2002). There, in the course of a divorce proceeding, the plaintiff hired the defendant, a licensed psychiatrist, as an expert on the issue of visitation. Id., 331. Without the plaintiff's permission, the defendant released his report to the plaintiff's wife, who attempted to use the report in the divorce action. Id. The plaintiff brought suit, alleging breach of contract and breach of fiduciary duty. Id. The defendant moved to dismiss the complaint, citing the plaintiff's failure to file an affidavit of merit, as required by statute in professional malpractice cases.[6] Id., 332–33. The trial court found that the complaint stated claims for medical malpractice and dismissed the action for lack of an affidavit of merit. Id., 332.

On appeal, the New Jersey Supreme Court, in the course of determining the nature of the plaintiff's claim, stated: "It is not the label placed on the action that is pivotal but the nature of the legal inquiry. Accordingly, when presented with a tort or contract claim asserted against a professional specified in the statute, rather than focusing on whether the claim is denominated as tort or contract, attorneys and courts should determine if the claim's underlying factual allegations require proof of a deviation from the professional standard of care applicable to that specific profession. If such proof is required, an affidavit of merit is required for that claim, unless some exception applies." Id., 340. The

---

[6] The relevant statute, N.J. Stat. Ann. § 2A:53A-27, provides in relevant part: "In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. . . ." N.J. Stat. Ann. § 2A:53A-27 (West 2008 pocket part).

court concluded that the complaint sounded in contract and, thus, did not require an affidavit of merit. Id., 342. "Plaintiff is not claiming that defendant erred in respect of the conclusions that he drew concerning psychiatric/medical matters or that defendant acted improperly from a psychiatric/medical standpoint in interviewing plaintiff's child. Instead, the crux of plaintiff's complaint is that defendant acted improperly as an expert witness by disseminating the report to others without the knowledge or consent of plaintiff. Although defendant's unauthorized dissemination of the report also might implicate a deviation from prevailing professional standards of practice, proof of that deviation is not essential to the establishment of plaintiff's right to recover based on breach of contract." Id.

Similar reasoning applies to the present case; however, differing circumstances require an opposite result. Although the plaintiff here denominated the claims in her complaint as sounding in ordinary tort and breach of contract, the factual allegations underlying the claims require proof of the defendants' deviation from the applicable standard of care of a health care provider, specifically, that of an obstetrician. The plaintiff pleaded that the defendants ignored the recommendations of the Yale high risk physicians group and that they disregarded her requests "for no valid medical reasons . . . ." We conclude that the court properly determined that the complaint in this case sounded in medical malpractice. It is not the label that the plaintiff placed on each count of her complaint that is pivotal but the nature of the legal inquiry.

II

The plaintiff also argues that the motion to dismiss was an improper procedural vehicle for the defendants to employ in attacking the complaint. She contends that the proper motion here would have been a motion to

strike challenging the legal sufficiency of the complaint rather than a motion to dismiss challenging the jurisdiction of the court. The plaintiff urges us to treat the motion to dismiss as a motion to strike, under which the complaint could be remedied by an amendment. We conclude that the action was dismissed properly by the court pursuant to the specific authorization of the governing statute due to the plaintiff's failure to file a written opinion of a similar heath care provider. See General Statutes § 52a-190a (c).

Resolution of the plaintiff's claim requires us to construe § 52-190a. Our review, therefore, is plenary. See *Doe* v. *Rapoport*, 80 Conn. App. 111, 119, 833 A.2d 926 (2003). Section 52-190a (a) requires a plaintiff bringing a personal injury claim sounding in negligence against a health care provider to make "a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. . . ." The plaintiff must attach to her initial pleading both "a certificate of the attorney or party filing the action . . . that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant" and a "written and signed opinion of a similar health care provider . . . that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. . . ." General Statutes § 52-190a (a). Subsection (c) provides that "[t]he failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action."

This court recently decided the very issue raised by the plaintiff here. In *Rios* v. *CCMC Corp.*, 106 Conn. App. 810, 820–21, 943 A.2d 544 (2008), the plaintiffs, who had alleged medical malpractice against the defendants but had failed to include a written opinion of a similar health care provider with their complaint, argued that

§ 52-190a (c) required the defendants to file a motion to strike rather than a motion to dismiss in challenging the complaint. The plaintiffs relied on *LeConche* v. *Elligers*, 215 Conn. 701, 579 A.2d 1 (1990), and *Gabrielle* v. *Hospital of St. Raphael*, 33 Conn. App. 378, 635 A.2d 1232, cert. denied, 228 Conn. 928, 640 A.2d 115 (1994), for the proposition that the failure to include a good faith certificate under § 52-190a (a) was not a jurisdictional defect. *Rios* v. *CCCM Corp.*, supra, 821.

In *Rios*, we noted that the legislature, in passing Public Act 05-275 of the 2005 Public Acts, had amended § 52-190a since *LeConche* and *Gabrielle* had been decided. Id., 822. Specifically, the amendment added to § 52-190a subsection (c), which was not in effect at the time of *LeConche* and *Gabrielle*. We held that the "plain language of this new statutory subsection  . . . expressly provides for dismissal of an action when a plaintiff fails to attach a written opinion of a similar health care provider to the complaint, as required by § 52-190a (a)." *Rios* v. *CCCM Corp.*, supra, 106 Conn. App. 822.

The court here, without the benefit of our holding in *Rios*, granted the defendants' motion to dismiss on the ground that the plaintiff's failure to comply with § 52-190a (a) deprived the court of subject matter jurisdiction. Every presumption in favor of jurisdiction is to be indulged. *Demar* v. *Open Space & Conservation Commission*, 211 Conn. 416, 425, 559 A.2d 1103 (1989). As we noted in *Rios*, however, motions to dismiss are not limited to jurisdictional challenges. *Rios* v. *CCCM Corp.*, supra, 106 Conn. App. 821 n.8. For example, under General Statutes § 52-549t (b) a court may dismiss an action when parties have failed to appear before a fact finder. The dismissal in § 52-549t (b) is discretionary and in no way implicates the jurisdiction or the power of the court to hear the case. Similarly, Practice Book § 14-3 provides for dismissal due to lack of dili-

gence in prosecution of an action. Again, the power of the court to hear the case is not implicated by virtue of a dismissal for lack of diligent prosecution under this provision.

We find the analysis in *Travelers Indemnity Co.* v. *Rubin*, 209 Conn. 437, 445–46, 551 A.2d 1220 (1988), insightful and, although addressing a different legal question, persuasive by analogy. Our Supreme Court has held that statutes of limitation are merely procedural when the right of action exists independently of the statute in which the limitation is found. "Where, however, a specific limitation is contained in the statute which establishes the remedy, the remedy exists only during the prescribed period and not thereafter." (Internal quotation marks omitted.) Id., 446. In such a situation, the statute of limitations is considered substantive or jurisdictional. Id. The plaintiff's right to bring a medical negligence action against her physicians here exists independently of § 52-190a and long preceded the enactment of that section. See *LeConche* v. *Elligers*, supra, 215 Conn. 709.[7] Her cause of action is not contained in "the statute which establishes the remedy," but, instead, is an action at common law. This provides further support for the proposition that the failure to comply with § 52-190a (a) is not a jurisdictional defect.

A plaintiff's failure to comply with the requirements of § 52-190a (a) does not destroy the court's subject matter jurisdiction over the claim; it does not affect the power of the court to hear her medical malpractice action. However, the legislature has provided that such a failure does render her complaint subject to dismissal pursuant to § 52-190a (c). Dismissal pursuant to this

---

[7] "[T]raditionally the Superior Court has had subject matter jurisdiction of a common law medical malpractice action." *LeConche* v. *Elligers*, supra, 215 Conn. 709.

section is a statutory remedy for any defendant who is subject to a legal action in which the statutorily required written opinion is not annexed to the complaint or initial pleading.

Citing the dissent in *Rios* v. *CCMC Corp.*, supra, 106 Conn. App. 822–27 (*Berdon, J.*), the plaintiff argues that the remedy is harsh because dismissal, unlike the granting of a motion to strike, ends the case and does not permit pleading over. The General Assembly has in § 52-190a (b)[8] provided that a plaintiff can obtain an extension of the statute of limitations to allow time for the inquiry required by subsection (a).[9] The plaintiff never moved to amend the complaint to attach the statutorily required documentation and took the position at argument that no certificate or written opinion was necessary. Our Supreme Court has stated that the purpose of § 52-190a is to "discourage the filing of baseless lawsuits against health care providers." *LeConche* v. *Elligers*, supra, 215 Conn. 710. We are bound to uphold the laws the legislature adopts. Subsection (c) of the statute plainly states that a failure to file the written opinion required by subsection (a) "shall be grounds for the dismissal of the action." Any change to the dismissal remedy when the required written opinion is not annexed to the complaint would require a legislative remedy, not a judicial one. Article second of our state constitution divides the powers of government into three distinct departments, each "confided to a separate magistracy . . . ." Legislative power under article third reposes in the Senate and the House of

---

[8] General Statutes § 52-190a (b) provides: "Upon petition to the clerk of the court where the civil action will be filed . . . an automatic ninety-day extension of the statute of limitations shall be granted to allow the reasonable inquiry required by subsection (a) of this section. This period shall be in addition to other tolling periods."

[9] At oral argument before this court, the plaintiff stated that she requested an extension pursuant to General Statutes § 52-190a (b). We note that the file does not contain a record of this request.

Representatives, not in the Judiciary. Conn. Const., art. III.

The court here determined properly that the plaintiff's claim sounded in medical malpractice. The plaintiff clearly did not attach to her complaint the written opinion of a similar health care provider. Because the purpose of § 52-190a is to require the opinion prior to commencement of an action, allowing a plaintiff to obtain such opinion after the action has been brought would vitiate the statute's purpose by subjecting a defendant to a claim without the proper substantiation that the statute requires.

Given the fallibility existing in the legal profession once noted by Justice David M. Shea,[10] it is possible that a written opinion of a similar health care provider, existing at the time of commencement of an action, might be omitted through inadvertence. In such a scenario, it certainly may be within the discretionary power of the trial judge to permit an amendment to attach the opinion, and, in so doing, deny a pending motion to dismiss. Such a discretionary action would not be at variance with the purpose of § 52-190a, to prevent groundless lawsuits against health care providers. See *LeConche* v. *Elligers*, supra, 215 Conn. 710. However, the plaintiff here made the claim in her brief to the trial court that her complaint did not sound in medical malpractice and in oral argument before this court made clear that such a written opinion did not exist. Although we would entertain a remand in a case in which we determined that the trial court improperly failed to exercise its discretion when it was properly called on to do so; see *Higgins* v. *Karp*, 243 Conn. 495, 504, 706 A.2d 1 (1998); we do not in the present case because it is clear that no opinion existed at the time the action

---

[10] See *Andrew Ansaldi Co.* v. *Planning & Zoning Commission*, 207 Conn. 67, 75–76, 540 A.2d 59 (1988) (*Shea, J.*, concurring).

was commenced, and, therefore, there was no room for discretion to be employed. Although the defendants might have waived this statutory requirement enacted for their benefit, they did not do so, and because the court properly found that the complaint did not contain the statutorily required written opinion, as the plaintiff here concedes, we affirm the court's decision. The defendants properly moved for dismissal, the statutory remedy in a medical malpractice action in which the proper documents are not annexed to the complaint. The plaintiff could not turn back the clock and attach by amendment an opinion of a similar health care provider that did not exist at the commencement of the action. We affirm the judgment of the court to dismiss the complaint because the plaintiff did not and could not comply with the statutory mandate requiring that the written opinion letter be filed with the complaint when the action was commenced, thus providing "grounds for the dismissal of the action." General Statutes § 52-190a (c). Although the court mistakenly held that the plaintiff's failure to comply with § 52-190a (a) deprived the court of jurisdiction, we may affirm a proper result of the trial court for a different reason. *Biro* v. *Hirsch*, 62 Conn. App. 11, 16 n.7, 771 A.2d 129, cert. denied, 256 Conn. 908, 772 A.2d 601 (2001).

The judgment is affirmed.

In this opinion the other judges concurred.