### KAREN MULTARI *v*. YALE-NEW HAVEN HOSPITAL, INC.
### (AC 34396)

Gruendel, Robinson and West, Js.

254

Argued December 5, 2012—officially released August 27, 2013

*D. Randall DiBella*, for the appellant (plaintiff).

*Michael D. Schweitzer*, for the appellee (defendant).

*Opinion*

ROBINSON, J. The plaintiff, Karen Multari, appeals from the judgment of dismissal rendered by the trial court in favor of the defendant, Yale-New Haven Hospital, Inc. The dispositive issue on appeal is whether the court erred in concluding that the plaintiff's complaint sounded in medical malpractice, rather than ordinary negligence. We reverse the judgment of the trial court.[1]

The following facts, as alleged in the complaint, and procedural history are relevant to our resolution of this appeal. The plaintiff is the grandmother of a child who was treated at the hospital. On November 6, 2009, she accompanied her son and granddaughter to the defendant's premises where her granddaughter underwent a surgical procedure. After the procedure, the defendant's staff reported to the plaintiff that the child was "thrashing around the recovery room as a result of the anesthesia." During a period when her son had left the surgical area, she was informed by the defendant that she must take the child and leave the hospital. Despite her protests that she wanted to wait for her son, a nurse packed up the child's belongings, put on the child's coat, and ushered the plaintiff and the child out of the hospital without the benefit of a wheelchair. The plaintiff, while carrying the child, tripped and fell as she exited the hospital, sustaining injuries.

The plaintiff filed a summons and complaint on October 31, 2011. In addition to alleging the previously stated facts, in paragraph 9 of her complaint, the plaintiff alleged that her injuries "were caused by the negligence of the defendant, its agents, servants and/or employees

[1] The plaintiff argues in the alternative that even if her claim sounds in medical malpractice, the requirements of General Statutes § 52-190a do not apply to her because she was not a patient pursuant to the statute. Because we conclude that the plaintiff's complaint sounds in ordinary negligence, not medical malpractice, we need not reach this argument.

or any one or more of the aforementioned in one or more of the following ways: (a) [i]n that they created a dangerous condition by causing, permitting or insisting that the plaintiff and her granddaughter leave the hospital before the child was fully awake from surgery, and without the benefit of a wheelchair; (b) in that they created a dangerous condition by causing, permitting or insisting that the plaintiff and her granddaughter leave the hospital before the child was fully awake from surgery, and before the plaintiff's son could return to help her; (c) in that they knew or should have known, the danger in the plaintiff carrying a groggy child and various belongings out to the parking area by herself, and should have assisted her; [and] (d) in that they knew, or should have known that it was unsafe to discharge a patient who was not fully recovered from anesthesia."

The plaintiff did not attach to her complaint a certificate of good faith or an opinion letter from a similar health care provider pursuant to the requirements of General Statutes § 52-190a.[2] On December 20, 2011, the

---

[2] General Statutes § 52-190a (a) provides in relevant part: "No civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant. To show the existence of such good faith, the claimant or the claimant's attorney, and any apportionment complainant or the apportionment complainant's attorney, shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. . . ."

defendant filed a motion to dismiss the plaintiff's action on the ground that she failed to comply with the requirements of § 52-190a. On March 6, 2012, the court, over the plaintiff's objection, granted the defendant's motion. This appeal followed.

On appeal, the plaintiff argues that the court improperly found that her complaint sounded in medical malpractice, rather than ordinary negligence. She maintains that a "fair reading of the complaint reveals that the condition of the child were circumstances relating to the plaintiff's fall and not the propriety of the child's medical treatment. Moreover, the complaint does not refer to or claim any harm whatsoever to the patient," mention the standard of care for medical malpractice, or name any physician. The plaintiff further asserts that none of the prongs of the three part test first enumerated in *Trimel* v. *Lawrence & Memorial Hospital Rehabilitation Center*, 61 Conn. App. 353, 357–58, 764 A.2d 203, appeal dismissed, 258 Conn. 711, 784 A.2d 889 (2001), to determine if a claim sounds in ordinary negligence or medical malpractice have been met. Accordingly, the plaintiff avers that her complaint does not sound in medical malpractice. We agree with the plaintiff.

The applicable standard of review is well settled. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a . . . question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . .

admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) *Bennett* v. *New Milford Hospital, Inc.*, 300 Conn. 1, 10–11, 12 A.3d 865 (2011). We also note that "[o]ur review of the trial court's interpretation of the pleadings . . . is plenary." (Internal quotation marks omitted.) *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, 113 Conn. App. 569, 576, 966 A.2d 813, cert. denied, 292 Conn. 911, 973 A.2d 661 (2009).

"The classification of a negligence claim as either medical malpractice or ordinary negligence requires a court to review closely the circumstances under which the alleged negligence occurred. [P]rofessional negligence or malpractice . . . [is] defined as the *failure of one rendering professional services* to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services. . . . Furthermore, malpractice presupposes some *improper conduct in the treatment or operative skill* [or] . . . the failure to exercise requisite medical skill . . . . From those definitions, we conclude that the relevant considerations in determining whether a claim sounds in medical malpractice are whether (1) the defendants are sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship, and (3) the alleged negligence is substantially related to medical diagnosis or treatment and involved the exercise of medical judgment." (Emphasis in original; internal quotation marks omitted.) *Trimel* v. *Lawrence & Memorial Hospital Rehabilitation Center*, supra, 61 Conn. App. 357–58.

Additionally, "[i]n Connecticut, we long have eschewed the notion that pleadings should be read in

a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension." (Internal quotation marks omitted.) *Dimmock* v. *Lawrence & Memorial Hospital, Inc.*, 286 Conn. 789, 802, 945 A.2d 955 (2008).

None of the allegations in subparagraphs 9 (a) through (c) satisfies the three part test used to determine whether a claim sounds in medical malpractice.[3] See *Trimel* v. *Lawrence & Memorial Hospital Rehabilitation Center*, supra, 61 Conn. App. 358. The plaintiff alleges that she was at the hospital for her granddaughter's surgical procedure and neither party disputes that the defendant is a medical professional. The complaint, however, characterizes the defendant as "own[ing] and/ or operat[ing] and [having] control over premises known as Yale-New Haven Children's Hospital" and alleges that it was negligent by "creat[ing] a dangerous condition" and not assisting the plaintiff as she carried her granddaughter and various belongings to the parking area. In interpreting the plaintiff's complaint broadly and realistically, the court cannot construe the plaintiff as suing the defendant in its capacity as a medical

---

[3] The analysis herein is limited to the issue of whether the allegations of the complaint state a cause of action sounding in medical malpractice or ordinary negligence. It does not address the strength or weakness of said allegations or whether the duties alleged to have been breached actually exist.

provider. Because none of the allegations in subparagraphs 9 (a) through (c) implicates the defendant's status as a medical provider, the first prong of the three part test has not been met.

Additionally, none of the plaintiff's allegations in subparagraphs 9 (a) through (c) claims that she was the recipient of medical services, that she had a medical professional-patient relationship with the defendant, or that the defendant's decision to force her to leave the hospital involved the exercise of medical judgment. Thus, both the second and third prongs of the three part test have not been met. Reading the complaint broadly, as we are required to do, one could infer that the defendant forced the plaintiff to leave because her granddaughter was being disruptive. The fact that the plaintiff's granddaughter was thrashing around after a medical procedure does not negate the actual, nonmedically related reason for the discharge—a disruptive child. Moreover, a reasonable reading of the allegations indicate that the plaintiff is not alleging that a wheelchair was necessary as a part of the child's medical treatment, but as something to prevent the plaintiff from becoming injured while transporting the child from the defendant's facilities. The plaintiff has not alleged medical malpractice in subparagraphs 9 (a) through (c), but simply ordinary negligence against an entity that happens to be a medical provider. The fact that the defendant is a medical provider, does not, by itself, preclude a finding that the plaintiff's action sounds in ordinary negligence. See *Jarmie* v. *Troncale*, 306 Conn. 578, 586, 50 A.3d 802 (2012).

Moreover, even though subparagraph 9 (d) employs language that is typically used to denote medical malpractice, reading that subparagraph in context with the rest of the complaint reveals that the subparagraph is

merely an inartfully worded description of the circumstances surrounding the reason for the plaintiff's ejection from the defendant's premises. The plaintiff alleges that the defendant owned and had control over the premises where she fell. She further alleges that employees of the defendant refused her requests to remain until her son could return. Although the complaint mentions that the plaintiff's granddaughter was still groggy from the anesthesia when they left the defendant's premises, the plaintiff has not brought suit on behalf of her granddaughter, nor has she named an individual medical provider as a defendant. A fair reading of the complaint reveals that the plaintiff alleges that the defendant's forcing her to leave without any help or her son's presence led to the plaintiff tripping and falling because she had to carry her groggy granddaughter, a diaper bag, and her pocketbook. In essence, the plaintiff, who was not under the defendant's medical care, is alleging that the defendant should not have forced her to leave its premises unaided. Such allegations do not constitute medical malpractice.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.

