******************************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.

******************************************************

## WENDY YOUNG *v.* HARTFORD HOSPITAL
### (AC 41997)

Moll, Devlin and Beach, Js.

*Syllabus*

The plaintiff brought an action to recover damages for injuries she sustained while undergoing a surgical procedure at the defendant hospital when the camera to a robotic surgical system being used to assist in the procedure allegedly fell on her. The plaintiff claimed that the defendant's negligence regarding the use and placement of the camera created, inter alia, a dangerous condition. Thereafter, the trial court granted the defendant's motion to dismiss the action on the ground that the plaintiff failed to provide a certificate of good faith and opinion pursuant to the medical malpractice statute (§ 52-190a). On appeal, the plaintiff claimed that the trial court erred in determining that her complaint sounded only in medical malpractice and, therefore, erred in dismissing her complaint. *Held* that the trial court erred in dismissing the plaintiff's complaint for failing to comply with § 52-190a, as a reading of the complaint as drafted did not necessarily foreclose the possibility that her injuries were caused by ordinary negligence not involving the exercise of medical judgment and, therefore, would not require a certificate of good faith; although the defendant had been sued in its capacity as a health care provider, and the alleged negligence arose out of a medical professional-patient relationship, the factual scenario alleged in the complaint did not detail the precise circumstances claimed to have resulted in injury, and although this court did not express any opinion as to the whether the plaintiff's claims will be barred by the failure to file a certificate pursuant to § 52-190a, in light of the court's duty to construe the allegations in the light most favorable to the pleader, some of the allegations might support a conclusion of ordinary negligence and some might support medical malpractice, as a reasonable reading of the complaint as drafted left little guidance as to the precise circumstances claimed to have resulted in injury.

(*One judge dissenting*)

Argued October 22, 2019—officially released March 3, 2020

*Procedural History*

Action to recover damages for, inter alia, the defendant's alleged negligence, brought to the Superior Court in the judicial district of Hartford, where the trial court, *Swienton, J.*, granted the defendant's motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed; further proceedings.*

*Stephen R. Bellis*, for the appellant (plaintiff).

*Stuart Johnson*, with whom, on the brief, were *Michael R. McPherson* and *Andrew S. Wildstein*, for the appellee (defendant).

*Opinion*

BEACH, J. The plaintiff, Wendy Young, appeals from the trial court's judgment dismissing her complaint against the defendant, Hartford Hospital, for her failure to provide a certificate of good faith pursuant to General Statutes § 52-190a. The plaintiff claims that the trial court erred in determining that her complaint sounded only in medical malpractice and, consequently, dismissing her complaint for failure to file an accompanying certificate of good faith as required for medical malpractice claims by § 52-190a. We agree.

The following facts, as pleaded by the plaintiff in her complaint, and procedural history are relevant to our discussion. The complaint alleged that "[o]n . . . May 11, 2016 . . . the defendant was in possession and control of a robotic surgical system that it uses to assist in performing hysterectomies. . . . On said date, the plaintiff . . . was a business invitee who had robotic hysterectomy surgery performed by Catherine C. Graziani [a physician] . . . . On May 12, 2016, the plaintiff experienced extreme pain on her left side with a black and blue [bruise] getting worse each day. . . . On May 16, 2016, the plaintiff contacted . . . Graziani's office because the left side of her torso was black and painful. . . . On May 17, 2016, the plaintiff saw . . . Graziani and was admitted to the emergency department for a CT scan. The plaintiff was put on morphine. . . . On June 10, 2016, the plaintiff was still bruised, swollen and in pain and, at an office visit with . . . Graziani, the plaintiff was told that the robotic camera fell on the plaintiff's left side. . . . Graziani had advised the defendant's employees in charge of the medical equipment, but the plaintiff was never told of said incident." The plaintiff instituted an action against the defendant, alleging that its negligence "created a dangerous condition by:

"a. allowing defective robotic equipment to be used in assisting with a surgical procedure;

"b. failing to inspect the robotic equipment prior to its use on the plaintiff;

"c. failing to properly secure the camera so that it does not fall on patients;

"d. failing to properly train its medical equipment personnel to recognize that the camera was not secure and could fall on patients;

"e. operating the robot in such a manner to cause the camera to fall;

"f. failing to notify the plaintiff that the camera fell on her;

"g. failing to warn the plaintiff that the camera could fall on her."

The complaint further alleged, that as a result of the

defendant's negligence, the plaintiff sustained injury. The plaintiff did not attach a certificate of good faith to her complaint.

On June 7, 2018, the defendant moved to dismiss the complaint on the ground that the trial court lacked personal jurisdiction. The defendant argued that the plaintiff had alleged a medical malpractice action, which, pursuant to § 52-190a, required her to include with her complaint a certificate of good faith based on the opinion of a similar health care provider, and her failure to do so deprived the court of personal jurisdiction over it. The plaintiff filed a memorandum in opposition to the defendant's motion, and the defendant filed a reply to the plaintiff's opposition. On August 8, 2018, the trial court granted the defendant's motion to dismiss the complaint. This appeal followed.

The standard for reviewing a court's ruling on a motion to dismiss pursuant to Practice Book § 10-30 (a) (2) is well settled. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *Bennett* v. *New Milford Hospital, Inc.*, 300 Conn. 1, 10–11, 12 A.3d 865 (2011). "Our Supreme Court has held that the failure of a plaintiff to comply with the statutory requirements of § 52-190a (a) results in a defect in process that implicates the personal jurisdiction of the court. . . . Thus, where such a failure is the stated basis for the granting a motion to dismiss, our review is plenary. . . . Further, to the extent that our review requires us to construe the nature of the cause of action alleged in the complaint, we note that [t]he interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary." (Citations omitted; internal quotation marks omitted.) *Nichols* v. *Milford Pediatric Group, P.C.*, 141 Conn. App. 707, 710–11, 64 A.3d 770 (2013).

"When a motion to dismiss for lack of personal jurisdiction raises a factual question which is not determinable from the face of the record, the burden of proof is on the plaintiff to present evidence which will establish jurisdiction. . . . In order to sustain the plaintiff's burden, due process requires that a trial-like hearing be held, in which she has an opportunity to present evidence and to cross-examine adverse witnesses . . . ." (Citations omitted; internal quotation marks omitted.) *Kenny* v. *Banks*, 289 Conn. 529, 533, 958 A.2d 750 (2008).

On appeal, the plaintiff claims that she did not need to comply with the requirements set forth in § 52-190a (a) because the statute did not apply to her claim. If § 52-190a (a) does apply, subsection (c) provides that

"[t]he failure to obtain and file the written opinion required by subsection (a) . . . shall be grounds for the dismissal of the action."

Section 52-190a (a) provides in relevant part: "No civil action . . . shall be filed to recover damages resulting from personal injury . . . in which it is alleged that such injury . . . resulted from the negligence of a health care provider, unless the . . . party filing the action . . . has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint . . . shall contain a certificate of the . . . party filing the action . . . that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant . . . . To show the existence of such good faith, the claimant . . . shall obtain a written and signed opinion of a similar health care provider . . . that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion."

According to its plain language, the provision applies only when two criteria are met: the defendant must be a health care provider, and the claim must be one of medical malpractice and not another type of claim, such as ordinary negligence. Although "health care provider" is not defined in § 52-190a, we note that General Statutes § 52-184b (a) defines the term, for the purpose of that section, as "any person, corporation, facility or institution licensed by this state to provide health care or professional services, or an officer, employee or agent thereof acting in the course and scope of his employment." General Statutes § 19a-490 (b) defines a hospital as "an establishment for the lodging, care and treatment of persons suffering from disease or other abnormal physical or mental conditions . . . ." We agree with the trial court's conclusion that the defendant is a health care provider for purposes of § 52-190a. The critical determination, then, is whether the trial court correctly determined that, as pleaded, the plaintiff's complaint sounded only in medical malpractice.

This court, in *Trimel* v. *Lawrence & Memorial Hospital Rehabilitation Center*, 61 Conn. App. 353, 764 A.2d 203, appeal dismissed, 258 Conn. 711, 784 A.2d 889 (2001), established a three part test for determining whether allegations sound in medical malpractice. "The classification of a negligence claim as either medical malpractice or ordinary negligence requires a court to review closely the circumstances under which the alleged negligence occurred. [P]rofessional negligence or malpractice . . . [is] defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of

injury, loss, or damage to the recipient of those services. . . . Furthermore, malpractice presupposes some improper conduct in the treatment or operative skill [or] . . . the failure to exercise requisite medical skill . . . . From those definitions, we conclude that the relevant considerations in determining whether a claim sounds in medical malpractice are whether (1) the defendants are sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship and (3) the alleged negligence is substantially related to medical diagnosis or treatment and involved the exercise of medical judgment." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 357–58.

The plaintiff challenges the trial court's finding that each of the three prongs of the *Trimel* test was satisfied. First, she contends that the first prong of the *Trimel* test is not met. She argues that she sued the defendant in its capacity as a general place of business rather than in its specific capacity as a health care provider. The plaintiff posits that the fact that the alleged negligent conduct occurred within a medical facility does not automatically invoke the defendant's status as a health care provider for the purposes of § 52-190a. Citing *Multari* v. *Yale New Haven Hospital, Inc.*, 145 Conn. App. 253, 75 A.3d 733 (2013), the plaintiff contends that "[t]he fact that the defendant is a medical provider does not preclude a finding that [the plaintiff's] action sounds in ordinary negligence."

The defendant responds that the first prong is satisfied because it, in fact, is being sued in its capacity as an institution providing medical care. It argued in its memorandum of law in support of its motion to dismiss that, because "this is not an instance where the type of injury alleged and manner by which it occurred could have occurred on any type of premises," the defendant's specific status as a medical provider and not as a general business owner was invoked. The trial court agreed with the defendant and found that the first prong was met, stating: "The allegations demonstrate that [the defendant] is being sued in its capacity as a medical provider, as the negligence alleged of [the defendant]— its employees, agents and servants—was during the operation of the robotic camera during a medical procedure and treatment of the plaintiff." (Emphasis omitted.)

We agree with the conclusions of the trial court. The robotic camera that allegedly "fell" onto the plaintiff was inferentially integral to surgical equipment that would not ordinarily be found in other business settings. Had the plaintiff's injuries occurred in circumstances not related to the alleged use of medical equipment but common to generic business premises, it may have been more appropriate to deem the defendant to have been

sued in the capacity of an owner of ordinary business premises.

It is clear from the complaint that the plaintiff was a patient of the defendant and was receiving treatment at the time of the alleged negligence. The trial court noted that "[t]he plaintiff was at [the defendant] for the sole purpose of having a medical procedure." Cf. *Multari* v. *Yale-New Haven Hospital, Inc.*, supra, 145 Conn. App. 253 (plaintiff, who was visitor, brought negligence action against defendant hospital to recover for injuries she sustained when she slipped and fell as she exited hospital). In the present case, because the plaintiff was under the care of the defendant in its capacity as a medical provider and suffered injuries while under treatment, we conclude that the first prong of the *Trimel* test was met.

In its memorandum of decision, the trial court combined its analyses of the second and third prongs of the *Trimel* test, suggesting, at least in this case, that the two prongs rise or fall together. The court did not analyze the elements within each prong independently.[1] We recognize some overlap, but find the considerations for evaluating some of the elements somewhat different.

The plaintiff contends that the second prong is not met. She argues that the alleged negligence is the defendant's failure, as an owner of business premises, to keep those premises reasonably safe for invitees, and is not negligence of a "specialized medical nature that arises out of the medical professional-patient relationship." She states in her brief: "The gravamen of the allegations in the complaint . . . do not allege negligence of a specialized medical nature. Equipment is not supposed to fall on business invitees, any more than a light fixture over the operating table is supposed to break during an operation and fall on the patient."

The defendant argues that both elements of the second prong are met because the alleged negligence and injury occurred while the plaintiff was the defendant's patient for the purpose of undergoing surgery. In support of its claim, the defendant cites to *Nichols* v. *Milford Pediatric Group, P.C.*, supra, 141 Conn. App. 707, and *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, 113 Conn. App. 569, 966 A.2d 813, cert. denied, 292 Conn. 911, 973 A.2d 661 (2009).

In *Nichols*, the plaintiff similarly argued that he was not required to comply with § 52-190a (a) because he sought to recover on a theory of ordinary negligence arising from the defendant's failure adequately to hire, to train, and to supervise the employee who collected his blood sample, resulting in his fainting and suffering multiple injuries. *Nichols* v. *Milford Pediatric Group, P.C.*, supra, 141 Conn. App. 711, 714. Specifically, he argued that collecting his blood sample was a "wholly

ministerial act," and, therefore, the act that ultimately led to his injuries was not of a specialized medical nature. Id., 714. This court found that because the blood collection was conducted as part of an overall medical examination by the defendant, it was of a specialized medical nature that arose out of a medical professional-patient relationship. Id.

In *Votre* v. *County Obstetrics & Gynecology Group, P.C*, supra, 113 Conn. App. 569, the plaintiff brought an action against her physicians and their medical practice, for their failure to consult the a certain high risk medical group concerning her case and their failure to refer her to that group regarding her pregnancy. Id., 573. This court held that the claim arose "out of the professional-patient relationship between the defendants and the plaintiff, as the facts underlying the claim occurred solely in the context of the defendants' ongoing medical treatment of the plaintiff. The claim is of a 'specialized medical nature' because it directly involves the plaintiff's medical condition: her high risk pregnancy." Id., 577.

In the present case, the trial court found that the second prong was met, stating that it "cannot imagine a scenario wherein the performance of surgery would *not* entail . . . the establishment of a medical professional-patient relationship." (Emphasis in the original.) We agree with the trial court insofar as it held that the complaint alleged injury arising out of the medical professional-patient relationship. Here, the injuries allegedly resulted from an occurrence during the plaintiff's surgery, and the performance of surgery inherently involves the establishment of a medical professional-patient relationship. The court did not expressly address the specialized medical nature element in concluding that the second prong was met. It is not clear to us that the injury necessarily was caused by negligence of a "specialized medical nature," or, relatedly, that the alleged negligence involved the exercise of medical judgment.[2]

The plaintiff argues that, although the injury in this case occurred during her treatment, the negligent conduct that caused such injuries was not related to her treatment because they were caused by equipment that broke and fell onto her during the procedure. Although the context was medical, she claims that the negligence was not medical in nature.

In response, the defendant argues that the second and third prongs are easily met because "the mechanism of injury . . . was not a mere object on the premises . . . [but, rather], it was a medical device instrumental in providing medical treatment." In support of its argument, the defendant cites to a federal case from Louisiana, *Moll* v. *Intuitive Surgical, Inc.*, United States District Court, Docket No. 13-6086 (EEF) (E.D. La. April 1, 2014). In its brief, the defendant contends that *Moll*

is highly instructive in analyzing whether the negligence was "of a specialized nature substantially related to the plaintiff's medical treatment," thereby combining one element of the second prong with another of the third prong. The defendant stated that, "[l]ike *Moll*, the gravamen of the plaintiff's claim here is that the hospital's clinicians should not have used the particular robotic equipment and that they operated the same 'in such a manner to cause the camera to fall.'" It cites *Moll* for the proposition that "[w]hen the tort [being] alleged relates to an injury caused by a m[a]lfunction in a medical device instrumental in providing medical services, the case for classifying the associated negligence as medical malpractice becomes stronger." (Internal quotation marks omitted.) Id., *4. The court in *Moll* found, inter alia, that "the incident occurred during a surgical procedure, which is clearly within the context of the physician-patient relationship"; id.; and held that the plaintiff had alleged claims of medical malpractice and, thus, was required to comply with the applicable pleading requirements. Id.,*5. *Moll* is not binding on this court, of course, and there are also factual differences between *Moll* and the present case.

In *Moll*, the plaintiff similarly underwent a robotic assisted laparoscopic hysterectomy. According to the plaintiff, the defendant healthcare provider, who purchased the surgical system used during her surgery, "breached its duty to furnish its hospital with reasonably adequate surgical equipment . . . that [the defendant] had custody . . . [guard] . . . and control over the device and knew or should have known of [its] unreasonably dangerous nature." (Internal quotation marks omitted.) Id., *1. As a consequence, she alleged that "she suffered a left ureter cautery burn that prevented a post-operative stent . . . [and] had to undergo [a] ureteral re-implantation." Id. The facts relied on in *Moll*, then, are sufficiently specific to support the conclusion.

In the present case, the trial court concluded that "the allegations of negligence are substantially related to the medical treatment," as "[t]he plaintiff was undergoing a hysterectomy when the camera fell on her, causing the injuries she is alleging. It fell *during* the medical procedure." (Emphasis in original.)

The plaintiff argues that, even if the camera fell during a medical procedure, the medical judgment requirement is still not met. In her brief, she asserts that "[t]he accidental malfunction of the equipment . . . does not involve the medical judgment of the medical professional, because it was caused by the malfunction of the equipment itself. The malfunction would not have been avoided by the exercise of . . . Graziani's medical judgment, instead, it could have been avoided by the defendant's exercise of its duty to provide a reasonably safe environment for its business invitees. It does not

require medical judgment to regularly check and maintain the facility and the equipment in it to avoid situations in which the equipment breaks and falls onto patients." The defendant argues, on the other hand, that "whether and how to use the robot during surgery is a question involving the exercise of medical judgment, and cannot be determined by a lay jury without expert testimony." (Emphasis omitted.)

In addressing the medical judgment element, the trial court stated: "The use of the robotic equipment . . . clearly involves medical judgment. . . . The court cannot imagine a scenario wherein the performance of surgery would *not* entail the involvement of medical judgment . . . ." (Emphasis in original.) We are obligated, however, to follow the well established law that "[w]hen a . . . court decides a . . . question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 10–11.

Our analysis is hampered by a paucity of facts. We, of course, must treat the facts alleged in the complaint as true, but there are very few facts alleged. The plaintiff has alleged that the defendant, at the time in question, "was in possession and control of a robotic surgical system that it [used] to assist in performing hysterectomies" and that she was in significant pain after undergoing "robotic hysterectomy surgery." She alleges that she later was told that "the robotic camera fell on [her] left side." She then listed seven specifications of the defendant's alleged negligence.[3] Depending on the factual circumstances, some of the allegations might support a conclusion of ordinary negligence (e.g., "failing to properly secure the camera so that it does not fall on patients") and some might support medical malpractice (e.g., "operating the robot in such a manner to cause the camera to fall"). Neither we nor the trial court are assisted by any facts regarding a description of the camera, where it was, how it was used, whether a medical provider was manipulating the camera at the time it "fell," to state but a few questions.[4] A holistic and reasonable reading of the complaint as drafted does not necessarily foreclose the possibility that injuries were caused by ordinary negligence not involving the exercise of medical judgment.

The specific factual scenario, then, is far from clear. We are left without guidance as to the precise circumstances claimed to have resulted in injury. In light of

the duty to construe the allegations in the light most favorable to the pleader, we are constrained to reverse the judgment of dismissal and to remand the matter to the trial court for further proceedings.[5] We, of course, express no opinion as to whether some or all of the allegations of negligence will be barred by the failure to file a certificate pursuant to § 52-190a.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion MOLL, J., concurred.

[1] We interpret the second prong to consist of two related but separate elements, both of which must be met: (1) the alleged negligence is of a specialized medical nature, and (2) the alleged negligence arises out of the medical professional-patient relationship. Similarly, the third prong consists of two related but separate elements, both of which must be met: (1) the alleged negligence is substantially related to medical diagnosis or treatment, and (2) the alleged negligence involved the exercise of medical judgment. We consider each element separately.

[2] We consider together the issues of whether the alleged negligence was of a "specialized medical nature" (part of the second prong) and whether the negligence "involved the exercise of medical judgment" (part of the third prong). See *Trimel* v. *Lawrence & Memorial Hospital Rehabilitation Center*, supra, 61 Conn. App. 353.

[3] See *Multari* v. *Yale New Haven Hospital, Inc.*, supra, 145 Conn. App. 260–61.

[4] *Trimel*, by contrast, was appealed to this court after summary judgment in the trial court, and the facts had been fully developed.

[5] Revised pleadings or limited discovery, for example, perhaps may serve to clarify the issue expeditiously.